# WHEELING.

## OGG v. MURDOCK.

Submitted June 16, 1884—Decided November 22, 1884.

*(WOODS, JUDGE, Absent.)

1. Where the facts and grounds actually exist, or the plaintiff has probable cause to believe they exist, on which an order for the arrest of the defendant is authorized by section 37 of chapter 106 of the Code, the plaintiff, who causes an arrest to be made under said statute, cannot be made liable in action of trespass for such arrest, merely because the affidavit and order of arrest are not regular and in proper legal form.  (p. 144.)

2. But in such case, the order of arrest is authorized only in a pending action or suit—this is made a condition precedent ; and if a party makes an affidavit and causes an arrest, without the pendency of an action for his claim, his proceedings will be void for want of jurisdiction to issue the order of arrest and he will be liable for damages in an action of tresspass brought by the party arrested.   (p. 145.)

3. The rule for the measure of damages in cases where the malice necessary to sustain the action is such only as results from a groundless act, and there is no actual malice or design to injure and oppress, is to allow compensatory damages ; that is, damages to indemnify the plaintiff, including injury to property, loss of time and necessary expenses, counsel fees and other actual loss ; but not to allow vindictive or punitive damages to punish the defendant.   (p. 146.)

*Counsel below.

4. A case in which the verdict of the jury was set aside by the appellate court because the damages found against the defendant were plainly excessive. (p. 147.)

The facts of the case appear in the opinion of the Court.

*A. F. Haymond* for plaintiff in error.

*Berkshire & Sturgiss* for defendant in error.

SNYDER, JUDGE:

Writ of error by the defendant below from a judgment of the circuit court of Preston county recovered by the plaintiff James A. Ogg, against John S. Murdock in an action of "trespass on the case for false imprisonment" commenced in said court October 30, 1880. The declaration contained three counts and the defendant appeared thereto and pleaded not guilty on which issue was joined, and tendered two special pleas in writing, the first of which is *sui generis*. It is as follows: The defendant comes "and craves oyer of the writ and declaration, and demurs to the same for misjoinder, the writ being in 'case' and the declaration in 'trespass,' and for other good and sufficient causes in law, and prays judgment of the court therein." The matter alleged in this plea could only be pleaded in abatement. The court rejected it and the plaintiff in error now contends that this was error, for the reason, as alleged, that, admitting it was not a proper plea, it was in fact a demurrer to the declaration. In my view it is unnecessary to consider whether or not this position is sound; for, if sound, the plea could only be treated as a general demurrer to the whole declaration, and so treating it, the defendant was not prejudiced by its rejection, because whatever may be said of the first two counts of the declaration the third is clearly a good common law count in trespass.

The second special plea sets up an accord and satisfaction and release, and issue was joined thereon. The case was tried by jury and a verdict returned and judgment given thereon for the plaintiff for $475.00. The defendant moved the court to set aside the verdict and grant him a new trial, on the ground that the verdict was contrary to the evidence, and because the damages found are excessive. The bill of excep-

tions certifies all the evidence adduced in the trial. The important questions, then, for this Court to determine are, *first*, Is the verdict contrary to the evidence? and, *second*, Are the damages found by the verdict excessive?

The plaintiff introduced in evidence the following papers:

1. An affidavit made by the defendant, entitled "John S. Murdock *v.* James A. Ogg—debt," and sworn to before the deputy clerk of Preston county, June 18, 1880, which is in these words:

"John J. Murdock, a credible witness, having been first duly sworn, says there is due him from the defendant, James A. Ogg, the sum of $97.94, with interest thereon from the 8th day of August, 1866, and $3.30 cost, and that the defendant is about to commit fraud in the following particulars:

That the defendant, who is a non-resident of this State, now temporarily in this State and county, and is now about to remove out of this State.

Second. That the defendant has money or effects that can not be reached by execution or attachment."

2. A bond of the defendant and John H. Brown in the penalty of $200.00, dated June 18, 1880, with this condition:

"Whereas the above bound John S. Murdock has this day sued out from the clerk's office of the county court of Preston county an order of arrest against one James A. Ogg to enforce the payment of a debt of $97.94, with costs: Now, therefore, if the said Murdock shall well and truly pay all costs and damages that may be awarded against him by reason of the said order and imprisonment, then this bond to be void, otherwise of force and virtue."

3. An order of arrest, entitled John S. Murdock, plaintiff, *v.* James A. Ogg, defendant, which, with the endorsments thereon, is in these words and figures:

"*To the Sheriff of the County of Preston:*

You are hereby required, in the name of the State of West Virginia, to arrest the defendant, James A. Ogg, and commit him to the jail of the said county of Preston, to be there safely kept unless or till he shall give a bond, with good security, in the penalty of $200.00, conditioned according to law, and that you return your proceedings under

this order to the next term of the county court of said county."

"Witness, J. Ami Martin, clerk of our said court, at the Court House of Preston county, the 18th day of June, 1880.

J. Ami Martin, *Clerk.*

"Executed the within by arresting the within named James A. Ogg and confining him in the jail of said county.

F. M. Ford, S. P. C.

*June* 18, 1880.

"Discharged the within named James A. Ogg from jail by order of plaintiff.

F. M. Ford, S. P. C.

*June* 21, 1880."

Then the plaintiff as a witness testified in substance as follows: That, on June 18, 1880, he was under said order arrested by the sheriff and confined in the jail of Preston county from that day until the afternoon of June 21, 1880, when he was taken by the sheriff from the jail to the office of R. W. Monroe, where he was informed that he was to answer interrogatories filed by the defendant, before said Monroe, that before he went to Monroe's office, at his request, the sheriff went with him to see William G. Brown, who advised him to compromise and settle the matter with the defendant; that while he was at Monroe's office he saw the defendant on the street and went to him, and after some conversation, he proposed to the defendant that he would give $50.00 to settle the matter; that before he was arrested the defendant met him and asked him if he would not pay him the judgment against him and he replied to defendant that he did not owe him and would not pay him one cent; that at the time he proposed to pay the defendant $50.00 the latter said he would take $60.00, and give him a receipt against his judgment, and that he then told defendant that the extra $10.00 would cost him trouble and money, and he then went with defendant to Monroe's office where he paid him the $60.00, and took his receipt against the judgment which receipt he had lost; that he was sixty years of age and had been sick for ten weeks in Monongalia county just before he came to Kingwood and was arrested and had then hardly recovered; that he was kept in jail continually in an

iron cell during his imprisonment and in a room which was offensive and unclean, that there was a privy in the room within twenty feet of where he was kept which was offensive, and the room was cold and damp and the imprisonment injured his health. On cross-examination he testified, that he had not been in Kingwood before since about 1867, that after 1867 he had been in the State of Pennsylvania nearly all the time for about eight years and during that time had occasionally been in Brooke, Hancock and Ohio counties and went to Monongalia county about 1879, shortly after January 1; "that he never left Preston county with the intention of staying away and had left a box with articles in it and expected to return, and made that his home since," that he was arrested a few days after his return to Kingwood, "and that the claim on which said judgment was founded was for board with the defendant who kept a hotel in Kingwood, and that he had no property which could be reached with an execution."

It was proved by said R. W. Monroe, that he was a commissioner of the court, and that interrogatories had been filed with him to be answered by the plaintiff.

The defendant's evidence so far as it is not in conflict with that of the plaintiff, is as follows: The defendant as a witness testified, that the plaintiff had boarded with him in and just prior to the year 1866, and had not paid him; that he threw off some of his demand in order to bring it within the jurisdiction of a justice and for this reduced sum he obtained a judgment against the plaintiff in 1866, which is the judgment in the declaration mentioned; that shortly after this the plaintiff left Preston county and had no property from which he could make his judgment, that he frequently heard that the plaintiff lived in Pennsylvania, and so far as he had heard or knew he had not been in Preston county from 1867 until a few days before he was arrested; that before the arrest he asked the plaintiff to pay him and he said he would not pay him; that he then went to counsel to advise as to the proper course to make his money and that the papers read to the jury by the plaintiff were prepared by counsel and he supposed they were all right; that he had not issued execution on his judgment since 1866; that plaintiff had often

said to him when he boarded with him that his home was in northern Ohio; that the amount of his judgment and costs was about $200.00, and when the plaintiff paid him the $60.00 he gave him a receipt in full and the plaintiff was then and there discharged.

Defendant also proved by Dr. Manown that in 1877 or 1878, witness was at Carmiclestown in the State of Pennsylvania, and there met the plaintiff and that he told witness he did not intend to return to Kingwood, Preston county.

This evidence, it seems to me, clearly establishes, (1) that Murdock, the plaintiff in error, at the time of the arrest had a legal demand against Ogg, the defendant in error, for the debt mentioned in his affidavit, (2) that he had sufficient grounds to justify him in the belief that the said Ogg was a non-resident of the State and that he had effects or money which he fraudulently concealed. These facts being shown, or existing and known to the plaintiff in error, he would, by a proper proceeding, have been legally entitled to have the said Ogg arrested and confined in jail in the manner in which he was arrested and confined.

The mode of proceeding in such case is prescribed in the Code of this State, sections 37, 38, 39 and 40 of chapter 106. By section 37 it is provided that an order of arrest may be made in any action by the court, or the clerk in vacation, upon affidavit of the justice of the plaintiff's claim and the existence of one or more of the following grounds for the arrest of the defendant: Among the grounds which are there stated are these: "Fourth, that he (the defendant) has property or rights of action which he fraudulently conceals, or sixth, that he is about to leave the State and reside permanently in another State or county, without paying the debt or liability for which the action or suit is brought."

If any one of these grounds exists the creditor is entitled to the order of arrest. Admitting that in this instance Murdock was not entitled to the order under the sixth ground, it is clear from the testimony that he was entitled to such order under the said fourth ground, and that was all the statute required.

That the affidavit here was not in proper form and did not strictly follow the language of the statute, is not material in

the present inquiry. Such want of form might be good ground for setting aside the order, but it did not make the proceeding void so as to entitle the party arrested to ignore it in a collateral action or proceeding. If the facts and grounds really existed on which the statute authorizes the arrest, the party who causes the order to issue and the arrest to be made, cannot be made liable in an action of trespass merely because he has not pursued the form prescribed by the statute. If he does that which confers jurisdiction for the issuance of the order and there is probable cause for the action taken by him, he cannot be treated as a trespasser; but the proceeding if irregular, must be set aside in a direct proceeding, and the party made liable for any damages inflicted by an action on the bond given.

This much, it appears to me, is too plain for argument. But in this case it is not shown that an action was pending at the time the order was issued and the arrest made. It is also true that it does not appear that an action was not pending. Assuming, then, that no action was, in fact pending—*de non apparentibus et non existentibus eadem est lex*—was the plaintiff in error liable to this action according to the evidence certified, and if so to what extent?

Under the statute the order of arrest can only be made in an action or suit. This plainly means a pending action or suit. The pendency of the action is made a condition precedent and the basis of the right to issue the order. It confers the jurisdiction on the court or clerk to issue it and, unless done in a pending action, the issuing of the order is without legal sanction or authority and the proceeding is void. This being true, the party causing the order to be issued is a wrong-doer and liable to an action for this wrongful act. And this is so, even when the act is done under the advice of counsel. The counsel in such case is simply the agent of the party and he will not be allowed to escape the consequences of the wrongful act by showing that it was done or caused by his agent. But if counsel had been retained in good faith and the facts fully and fairly stated to him, and in consequence of his erroneous advice, or mistaken action, the wrong was done, the party would be admitted to prove this fact in mitigation of damages and to repel any

presumption of malice which might otherwise arise from the act done— *Vinal* v. *Core*, 18 W. Va. 4 syllabus 21; *Cooper* v. *Utterbach*, 37 Md. 284.

The plaintiff in error, being liable in this action in the manner and upon the grounds stated, the next enquiry is, to what extent is he liable, that is, is he liable for punitive or merely compensatory damages? The determination of this question will decide whether or not the damages found by the verdict are excessive.

In *Barnett* v. *Read*, 51 Pa. St. 191, which was an action for maliciously issuing an execution against the plaintiff in the action, *when the defendant knew* the judgment on which the execution was issued had been paid, the court approved an instruction to the effect following: When the malice is such only as results from a groundless act, and there is no actual malice or design to injure, the rule is to allow compensatory damages; but when actual malice exists, a formed design to injure and oppress, the jury may give vindictive damages. Compensatory damages are such as indemnify the plaintiff, including injury to property, loss of time and necessary expenses, counsel fees and other actual losses. Vindictive damages may be given to punish the defendant for his fraud and actual malice.

In *Vinal* v. *Core*, Judge Green, in delivering the opinion of the Court says, in reference to this rule, that it seems to be "the proper rule of damages in that case, as the character and reputation of the plaintiff were not injured by the wrongful act of the defendant."—18 W. Va. 49.

I think the rule just stated is correct and applicable to the facts in this case. The wrongful act here complained of is simply the result of a groundless act. It consisted of arresting the plaintiff, where the existing facts would have warranted the arrest if the proper legal steps had been taken, but which had not in fact been taken. The only omission was the failure to institute the action against the plaintiff before causing the arrest. This may have been, and no doubt was, the mistake of defendant's counsel, as he says the papers were prepared by counsel and he "supposed they were all right." But be this as it may, it is apparent from all the evidence that the only object of the defendant was to collect

the debt justly due him from the plaintiff by legal process, to which the facts entitled him to resort. Because by omitting to do that, which formed the foundation of the proceedings, the defendant made himself liable to this action, it does not follow that his act was malicious or intended to injure and oppress the plaintiff. The facts proved repel the presumption of malice, and there being no proof of an intent to injure and oppress the plaintiff, the jury were not authorized to find that the defendant was actuated by malice and consequently they were not justified in giving vindictive damages, which, I think, their verdict for $475.00 clearly shows they did. According to the rule above announced, the plaintiff being entitled simply to compensatory damages, could recover only for the injury to his property, loss of time, counsel fees, and other actual loss.—*Parsons* v. *Harper*, 16 Grat. 64 ; *Curry* v. *Pringle* 11 John. R. 444.

The proof in this case is that the plaintiff was imprisoned from Friday to the afternoon of the following Monday, and there is not a particle of evidence to show that he sustained any injury or loss other than the loss of his time during his imprisonment. He says himself that he had no visible property and does not pretend that he was engaged in any business. He proved no data from which his loss of time while imprisoned can be estimated. It is not for the Court to fix the amount of his damages further than to define the rule by which they are to be fixed by the jury, but when the damages found by the jury, as in this case, are in plain disregard of the limits thus fixed, it is the duty of the Court to set aside the verdict and order a new trial.—*Toledo P. & W. R. R. Co.* v. *Patterson*, 63 Ill. 304 ; *Kolb* v. *O'Brien*, 86 *Id.* 210.

For the reasons aforesaid I am of opinion that the judgment of the circuit court should be reversed, the verdict of the jury set aside and a new trial awarded.

REVERSED.—REMANDED.