# CHARLESTON.

BASCOM W. PENDLETON v. NORFOLK & WESTERN RAILWAY COMPANY *et al.*

Submitted April 16, 1918.    Decided April 23, 1918.

1. ASSAULT AND BATTERY—*Self-Defense—Pleading.*

    In a civil action to recover damages for an assault and battery, the defendant cannot justify upon the ground of self-defense, unless such matter of justification be specially pleaded.  (p. 274).

2. SAME—*Self-Defense—Mitigation of Damages—Pleading.*

    In such case, however, evidence tending to show that the assault was committed by the defendant in self-defense may be introduced under the plea of not guilty, in mitigation of damages, but not in justification of the assault.  (p. 274).

3. SAME—*Action for Damages—Evidence.*

    In a civil suit to recover damages for an assault and battery, it is not proper to admit in evidence the record of a justice of the peace showing the conviction of the plaintiff in the civil suit of an assault and battery upon the defendant for the very same transaction which affords the basis for the civil suit, from which conviction an appeal was taken, and which charge still remains undetermined upon the appeal.  (p. 274).

4. SAME—*Damages—Exemplary.*

    Punitive damages should not be awarded in any case unless there is evidence from which the jury may conclude that the defendant acted with malice toward the plaintiff, or with reckless and wanton disregard of the plaintiff's rights.  (p. 275).

5. SAME—*Action for Damages—Punitive Damages.*

    Where in an action for assault and battery there is evidence tending to show that the defendant acted with malice toward the plaintiff, or with reckless and wanton disregard of the rights of the plaintiff, it is proper to instruct the jury that if they believe that the defendant did so act they may in their discretion award damages in excess of that which would compensate the plaintiff for his injury, as a punishment to deter the defendant and others from the commission of like offenses.  (p. 275).

6. DAMAGES—*Punitive Damages—Award with Reference to Compensatory Damages.*

    Punitive damages should not be awarded in a case where the amount of compensatory damages is adequate to punish the defendant, and in a case where such compensatory damages are not

in the judgment of the jury adequate for the purpose of punishment, only such additional amount should be awarded as taken together with the compensatory damages will be sufficient for that purpose. (p. 275).

7. SAME—*Punitive Damages—Amount.*

   In a case where it is proper to award punitive damages the amount of such award must bear some reasonable proportion to the amount of compensatory damages. (p. 278).

8. SAME—*Punitive Damages—Excessive Damages.*

   In a case in which it is proper for a jury to award punitive damages, it is competent to consider the station of the parties, and particularly the financial and social standing of the defendant, in order that it may be determined what will be adequate and sufficient punishment, and where, after considering these elements, as well as the nature and character of the offense committed, the amount found is so out of proportion to the injury inflicted that it is patent that the jury were actuated by motives of ill feeling toward the defendant in ascertaining such damages, and not alone by the purpose to punish the defendant, such verdict will be set aside as excessive. (p. 278).

9. ASSAULT AND BATTERY—*Punitive Damages—Excessive Damages.*

   Where in a civil action to recover damages for assault and battery the actual damages found by the jury are substantial as in this case, an award of punitive damages for ten times the amount of the actual damages awarded will not be sustained. (p. 278).

Error to Circuit Court, Mercer County.

Action by Bascom W. Pendleton against the Norfolk & Western Railway Company and others. Judgment for plaintiff, and defendants bring error.

*Reversed and remanded.*

*French & Easley, Bernard McClaugherty,* and *A. W. Reynolds,* for plaintiffs in error.

*Sanders, Crockett & Kee,* and *John R. Pendleton,* for defendant in error.

RITZ, JUDGE:

The plaintiff in this case purchased a ticket from the defendant railway company's agent at Pocahontas, Virginia, entitling him to passage on one of its passenger trains to

Cooper, West Virginia. He claims that with this ticket in his possession he boarded a train of the defendant company at Pocahontas, and placed his hand baggage in a seat in one of the cars thereof; that before he got on the train he had been in conversation with a minister of the gospel by the name of Gose, with whom, however, he had had no previous acquaintance. After taking his seat he observed Gose in another seat, and for the purpose of resuming the conversation with him he left his baggage and took the seat beside him. In going to the station of Cooper the train upon which plaintiff was a passenger passed the station of Bluestone Junction. At some point between Pocahontas and Bluestone Junction the conductor came through the car and, as plaintiff contends, took up his ticket from Pocahontas to Cooper. This statement is fully borne out by the testimony of Mr. Gose who says that he and the plaintiff were occupying the same seat, and when the conductor came through he, Gose, gave the conductor his mileage to Bluestone Junction, and that the plaintiff surrendered his ticket to the conductor. This is denied by the conductor. When the train reached Bluestone Junction Gose alighted therefrom, and the plaintiff returned to the rear of the car and took his former seat. After the train left Bluestone Junction on its way to Cooper the conductor again came through the car and called upon the plaintiff for his ticket. The plaintiff informed the conductor that he had surrendered his ticket before reaching Bluestone Junction, and also gave the conductor information as to his changed position since leaving that station. The conductor denied this statement of the plaintiff and contended that he had not received any ticket or fare from him, and the plaintiff, it seems, was as insistent that he had surrendered his ticket to the conductor. While the controversy was going on the conductor continued to take up tickets from the passengers in the adjoining seats. It seems that when the conductor approached the plaintiff on this occasion and demanded his ticket plaintiff was reading a newspaper, and while the controversy with the conductor was going on he folded this newspaper and held the same in his hand. Plaintiff says that when the conductor repeatedly charged him

with not paying his fare he arose in his seat and insisted to
the conductor that he had surrendered his ticket on the oc-
casion referred to, and in order to be impressive tapped the
conductor on the shoulder with the folded newspaper, which
he states was a habit he had when in conversation with others
whom he desired to impress with his statements. About the
same time, according to his statement, he told the conductor
if he, the conductor, said that he had not given him his ticket
he was a damn liar, and plaintiff says that when he made
this statement the conductor struck him a severe blow in the
face, which knocked off his glasses and cut a very deep gash
over one eye. As a result of this blow the plaintiff fell in
his seat, and according to his statement the conductor con-
tinued to pummel him with his fists until he had administered
some ten or twelve severe blows to him, and then kicked him
in the leg, as a result of which he sustained a severe gash.
About this time the train had reached the plaintiff's destin-
ation, Cooper, and the plaintiff was told to get his traps and
get off the train, which he did. The same afternoon he re-
turned to Bluefield and went to a hospital, where his wounds
were treated, and where he remained until the next afternoon
when he left the hospital and went to Princeton, where he
was again treated by a physician. The conductor, who is
one of the defendants here, contends that the plaintiff's story
is not accurate as to the occurrence on that occasion. He
states that the plaintiff never gave him the ticket to Cooper,
but that when he approached the plaintiff, and the plaintiff
insisted that he had given him the ticket, he had come to the
conclusion that because of the probability of his making a
mistake he would give the plaintiff the benefit of the doubt,
and passed on to take tickets from the passengers to the rear
of plaintiff; that when he did this plaintiff rose up in his seat
and accused him, the conductor, of trying to embarrass him
before the passengers by charging him with attempting to
defraud the railroad company out of the insignificant fare,
and called him a damn liar, and struck him in the face with
the newspaper, whereupon he struck the plaintiff with his
fist and knocked him down in his seat, and according to his
own statement struck him four or five severe blows, and then

kicked him with his foot. A number of eye witnesses to the occurrence testify in regard thereto. Some of them support the plaintiff in his contention, and some support the conductor in his theory of what occurred. A verdict was returned by the jury in favor of the plaintiff in the sum of $5557.50, and under the direction of the court the jury found that the plaintiff was entitled to recover $557.50 for his actual damages, and $5000.00 was fixed as punitive damages, making the total of the verdict as aforesaid. Upon this verdict judgment was rendered, and this writ of error is prosecuted thereto.

It cannot be doubted that the evidence fully justified the jury in finding a verdict in favor of the plaintiff. It is insisted that the court should have directed such a verdict inasmuch as the defendants admit the assault committed on the plaintiff, but attempt to justify the same as an act of self defense. It is contended that there was no plea filed which would allow evidence to be introduced tending to show that the conductor acted in self-defense, or justifying the instructions which the court gave upon this theory of the case. It does not appear from the record that any such plea of justification is filed, and it seems to be very well established that in a civil action for assault and battery, in order for the defendant to justify upon the ground of self-defense, the same must be specially pleaded. *Shires* v. *Boggess,* 68 W. Va. 137; *Hunt* v. *DiBacco,* 69 W. Va. 449; 2 Enc. of Pleading and Practice, 862; 5 C. J. 655. It may be true that even where the only plea is one of not guilty it is proper to admit evidence that the defendant acted in self-defense, for the purpose of mitigating damages, but such evidence cannot go to the extent of justifying an assault, unless a special plea is filed relying thereon as a justification.

Upon the trial of the case the defendant offered, but was not permitted to prove, that after this occurrence a warrant was issued for the plaintiff by a justice of the peace charging him with an assault and battery upon Davis, the conductor; that he had been tried before the justice upon that warrant and convicted and fined, from which judgment of conviction he had appealed to the criminal court of Mercer county,

where such appeal was at that time still pending and undetermined. This evidence was properly rejected. There had been no conviction which was binding upon the defendant for the reason that when he appealed from the judgment of the justice of the peace to the criminal court, the justice's judgment no longer had validity or force, and the only thing that could be said was that there was a charge against him for committing an assault and battery upon Davis, and the record showed that he plead not guilty to the charge and denied it. The case of *George* v. *N. & W. Ry. Co.*, 78 W. Va. 345, is cited as justifying the admission of the record of the proceedings before the justice of the peace. In that case it was held that the record of a justice of the peace showing that the plaintiff had been convicted upon his own confession of the offense of larceny should have been admitted as tending to mitigate damages. There the plaintiff was suing for false imprisonment, and a considerable element of the damages claimed by him was for the humiliation which he suffered from being placed under arrest on a charge of larceny, and it was held that surely the evidence that the plaintiff plead guilty to the charge of larceny should be received to mitigate damages, for it is quite apparent that one admittedly guilty of larceny would not be humiliated by being charged therewith to the same extent as one entirely innocent of the charge. Here we have no admission by the plaintiff of guilt, but simply a pending criminal charge against him, and we cannot see that this record would have had the slightest tendency to prove any issue involved in this case.

On the motion of the plaintiff the court instructed the jury as follows: ''The court instructs the jury that if they find for the plaintiff, then in estimating the damages to which he is entitled they may take into consideration the physical injury inflicted upon plaintiff, his physical and mental pain and suffering, shame and humiliation, the damage to his glasses from being broken, the amounts expended by him for hospital fees and doctor's fees, loss of time; and fix his damages at such sum as will fully compensate him for the injury inflicted upon him. And in addition to these compensatory

damages, if the jury believe from the evidence that the assault made upon plaintiff was wanton, wilful, reckless, or malicious, then the jury may award the plaintiff punitive or exemplary damages such as will deter others from committing, and the defendants from repeating, like conduct.'' It is insisted that this instruction is wrong for the reason that it allowed, or rather directed the jury, in case they determined that exemplary or punitive damages should be awarded, to add to the actual damages sustained such sum as they thought should be awarded as punitive damages, in violation of the rule announced in the cases of *Claiborne* v. *Ry. Co.,* 46 W. Va. 363; *Allen* v. *Lopinsky,* 81 W. Va. 13, 94 S. E. 369; *Hess* v. *Marinari,* 81 W. Va. 500, 94 S. E. 968; and *Marcuchi* v. *Ry. Co.,* 81 W. Va. 548, 94 S. E. 979; and the plaintiff concedes that this instruction is bad for that reason, but he insists that inasmuch as the jury found the amount of actual damages to which he is entitled, and also found a separate amount which in their judgment is necessary to punish the defendants for the assault committed, he should be allowed to release or reduce the judgment to the extent that the damages are cumulated, and as thus reduced the judgment should be affirmed. It is. true in this case the verdict of the jury ascertained the amount of actual damages, and also the amount which in their opinion is required to adequately punish the defendants for the act complained of, and when we consider that all of the damages awarded are punitive so far as the defendants are concerned, that is, that they get nothing for them, and that the amount which the jury found is necessary for punishment is larger than the amount which they found is necessary for compensation, the verdict should have been, of course. for the larger amount, because this would include not only sufficient punishment to the defendant, but all of the compensation to which the plaintiff was entitled. The defendants insist that this cannot be done for the reason that the punitive damages awarded are excessive, and that no such award as five thousand dollars is justified in this case. Of course, if this contention of the defendants is correct, we could not follow the. course indicated above, but would have to set aside the verdict. in toto and award a new trial. We

have considered the evidence in this case from every stand-
point with a view of determining whether or not the verdict
of five thousand dollars for punitive damages can be sus-
tained.    We have taken into consideration the fact that one
of the defendants is a large railroad corporation, and that
the infliction of a small fine upon it in the way of punitive
damages would not have the same effect that the imposition
of a like fine would have upon an individual of moderate
means.    We have considered the aggravated nature of the as-
sault as testified to by the plaintiff and his witnesses, and
evidently as the jury believed it to have existed.    We have
also taken into consideration the fact that the plaintiff was
a passenger upon the defendant company's train, and that
instead of being assaulted he was entitled to the active pro-
tection of the defendant company and its servants, yet we
cannot come to the conclusion that any such finding as five
thousand dollars is justified as a punishment to the defend-
ants here for the act complained of.    The jury found that
$557.50 was sufficient for compensation to the plaintiff for all
of the injury suffered by him, including compensation for
insult and mortification and mental pain and suffering, and
we think this finding was very reasonable.    Anything in ex-
cess of that sum is awarded not because the plaintiff is en-
titled to it, or has any right to demand it, but simply because
of the doctrine that in this character of cases the jury may
award damages as punishment in addition to the award of
compensatory damages.    As we said in the case of *Hess* v.
*Marinari, supra,* exemplary damages should bear some reason-
able proportion to the actual damages sustained, and what
we mean by that expression is that the character of the injury
inflicted should in some degree be considered by the jury in
measuring the punishment to be meted out to the defendants.
This principle is recognized in the administration of the crim-
inal laws.    It is well known that judges in inflicting punish-
ment always consider the extent of the injury done in de-
termining what punishment will be inflicted upon the de-
fendant.    It is true there are other elements that enter into
the ascertainment of this character of damages, such as the
character and reputation of the parties, their standing in

society and their financial ability. The object of such punishment is to deter the defendants from committing like offenses in the future, and this it may be said is one of the objects of all punishment, and we recognize that it would require, perhaps, a larger fine to have this deterrent effect upon one of large means than it would upon one of ordinary means, granting that the same malignant spirit was possessed by each. Upon this question of the measurement of punitive damages we have some statutes allowing a recovery of double damages or treble damages where a trespass is committed wantonly and maliciously, and while we do not mean to say that these statutes furnish an infallible guide to be followed in the ascertainment of punitive damages in a case like this, still they are an indication of public policy as ascertained and declared by the legislative body in this regard, and the analogy existing between the damages awarded under such statutes and the damages sought under the claim of punitive damages in cases like this, make them a guide which cannot well be disregarded when a verdict of this character is challenged on the ground of excessiveness. We are of the opinion that a verdict which awards to a plaintiff nine or ten times as much damages by way of punishment as he is entitled to by way of compensation, in a case in which substantial compensatory damages are awarded, is indicative that the jury were influenced in some improper way in reaching the same, and while it is true that ordinarily the jury will be held to be the judge of what amount should be added as punitive damages in order to secure adequate punishment in this class of cases, we cannot allow a verdict to stand where the amount thereof is so disproportionate to the amount of actual damages, is so out of harmony with the theory upon which punishments are inflicted for like offenses that it convinces us that the jury were misguided, to say the least, in returning the same.

The defendants also argue that under the evidence this is not a proper case for the award of punitive damages. We cannot agree with this contention. If the plaintiff's statement of the case is correct, the jury were entirely justified in coming to the conclusion that there was a wanton and wil-

ful disregard of his rights, and in awarding punitive damages against the defendants. It is quite true that where the uncontradicted evidence shows that there is no malice, or no wanton or reckless disregard of the rights of the plaintiff, the court will refuse to permit a recovery of punitive damages, but where the evidence is conflicting, and where it may be said that if one theory of the case is correct there may be ground for the imposition of such damages, the matter is properly submitted to the jury in order that it may be determined whether or not one theory is true or the other. The instructions in this case carefully submitted that question to the jury and made the jury the sole judge of whether or not, even though they found that defendants were actuated by malice or a reckless and wanton disregard of plaintiff's rights, punitive damages would be given. These damages are not given as a matter of right. Plaintiff cannot claim them for any reason. The jury is at perfect liberty, no matter how wanton or reckless the defendant has been, to refuse punitive damages, and they are only at liberty to award them when there has been such reckless and wanton disregard of plaintiff's rights as show a malignant spirit upon the part of the defendant.

It follows from what we have said that the judgment of the circuit court of Mercer county complained of will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial.

*Reversed and remanded.*