# CHARLESTON.

JOSEPHINE ELIZABETH COOPER *v.* CHESAPEAKE & OHIO RAILWAY CO.

## (No. 5562.)

Submitted March 23, 1926.   Decided March 30, 1926.

CARRIERS—DAMAGES—*To Warrant Punitive Damages in Trespass, Evidence Must Show Wrongful Act Was Committed in Spirit of Mischief or Criminal Indifference to Civil Obligations; In Action by Passenger Against Railroad Company for Personal Injuries by Brakeman, Evidence Held Not to Warrant Recovery of Punitive Damages.*

> In order to warrant the assessment of punitive damages in an action of trespass, it must appear from the evidence that the wrongful act was committed in a spirit of mischief or of criminal indifference to civil obligations.   Point 3 in the syllabus of *Jopling* v. *Improvement Co.,* 70 W. Va. 670, approved and applied.

HATCHER, WOODS, JUDGES, absent.

(Carriers, 10 C. J. § 1398: Damages, 17 C. J. § 280.)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Logan County.

Action by Josephine Elizabeth Cooper against the Chesa-

peake & Ohio Railway Company.   Judgment for the plaintiff, and defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Fitzpatrick, Brown & Davis,* for plaintiff in error.
*Chafin & Estep,* for defendant in error.

HATCHER, JUDGE:

The defendant, the Chesapeake and Ohio Railway Company, seeks relief here from a judgment against it of $1,000.00, entered by the circuit court of Logan County.

On Friday, February 6, 1925, the plaintiff, Josephine Cooper, aged fifteen years, her younger sister, Marian, and several other school girls, were passengers on a train of defendant, which left the city of Logan at 6 P. M.   This train consisted of several day coaches, a parlor car, and an empty coach next to the parlor car, which the conductor called an extra or dead-head coach, and which he stated was put on Friday to handle the overflow Saturday crowd.   The children lived about eight miles from Logan, attended school at Logan, and used the trains of defendant for transportation.   They were in the habit of occupying the coach next to the parlor car, so on February 6, they took seats in the extra coach.   The conductor saw them in this coach and instructed a brakeman to put them out.   The brakeman announced to the children that they would have to go into another car, as he was not going to turn on the light in the extra coach.   Marian Cooper said to the brakeman that it was not dark, and asked him to let them ride where they were.   The plaintiff described what ensued as follows: "And then he came up to her and put his arm around her shoulder, and she didn't know what he was going to do; and she got up and moved to the next seat, and he came down there and got hold of her between her and the seat and shoved her down the aisle, and the girl she was with got up, and he came to me, and I told him not to touch me, and he caught hold of my shoulder and jerked me up out of my seat, and I told him, I said 'You better turn loose of me.' I said 'You better not do me like that.'   He said 'The hell I won't', and pulled me out in the aisle and I slapped him, and

he shoved me down the aisle and I went in the next coach and I started crying, and went in the next coach, and we sat down there, and I stopped crying before I got off the train, and I was just nervous after that''. All of the girls present except one, closely support the plaintiff's testimony.

The plaintiff contracted a cold about that time and after returning to school for several days during the week following the scene with the brakeman, missed eight days from school because of a severe attack of bronchitis. The physician who attended her admitted that a nervous shock had a tendency to weaken the body and render it more likely to succumb to disease, but stated that he could not see how the condition of plaintiff's throat could have been caused by fright or anger at the brakeman.

The brakeman denied saying to the plaintiff ''The hell I won't''. His testimony is: ''Some girl spoke up and said she wasn't going, and I couldn't put her out. I took hold of her arm and pulled her out of the seat and walked two or three steps and turned her loose, and she turned around and struck me, and they all went on out.''

The plaintiff made no direct denial of the defiant remark attributed to her by the brakeman, but she did state that she had said nothing to him before he came to her seat. She admitted becoming angry when the brakeman shoved her sister down the aisle, and that the reason she cried was because of anger.

Counsel for plaintiff admit that the defendant, through its employees, had the right to require passengers to leave the extra coach; that it was the duty of the plaintiff to comply with the request of the brakeman, and that upon her failure to do so, the brakeman had the right to eject her using such force as was necessary without inflicting physical injury. Counsel contend that whether the brakeman used more force than was necessary or inflicted physical injury upon the plaintiff in exercising this right were questions of fact to be determined by the jury.

The defendant does not seriously controvert the position of plaintiff, and we hold it to be correct. But defendant does contend that the case was not properly submitted to the jury

because of Instruction Number 2, given on behalf of plaintiff. That instruction is as follows: ''The court further instructs the jury that if they believe from the evidence in this case that the brakeman, Sovine, assaulted the plaintiff in the manner testified to by the plaintiff, and believe further that said Sovine acted maliciously then the jury may, in addition to the compensatory damages to which they believe the plaintiff entitled, if any, add thereto such further damages as, taken, in connection with said compensatory damages, will, in the opinion of the jury, result in a sufficient punishment to the defendant for such action of the part of its said brakeman.''

The form of the instruction is bad. Similar instructions were condemned in *Hess* v. *Marinini*, 81 W. Va. 500; *Allen* v. *Lopinski*, 81 W. Va. 13; and *Marcuchi* v. *Ry. Co.*, 81 W. Va. 548 (554). In the latter case it was pointed out that ''It is not correct to say that a jury may include in the verdict exemplary or punitive damages in addition to damages they may find to be sufficient to compensate for an injury inflicted and feelings wounded. This court has recently twice stated the true rule to be that exemplary damages may be allowed properly only when the jury may deem the compensation fixed insufficient to deter defendant and others from engaging in like conduct when actuated by wantonness or passion.''

In the instruction complained of the plaintiff bases the right of the jury to award exemplary damages solely on the theory that the brakeman's conduct was the result of *malice*. There is no question but that punitive damages may be awarded in such cases, if malice be proven. In *Barnett* v. *Read*, 51 Pa. St. 191, it was held ''Vindictive damages may be given where there is actual malice, to punish the defendant.'' That rule was approved and followed in *Ogg* v. *Murdock*, 25 W. Va. 139, and in later decisions of this court. Malice, however, must be clearly shown. In the Ogg case a verdict awarding punitive damages was set aside for the reason that there was ''no proof of an intent to injure and oppress the plaintiff.'' Because there was no evidence of ''any actual malice or design to injure and oppress plaintiff'' like action was taken in *Claibourne* v. *Ry. Co.*, 46 W. Va. 363. The malice justifying an award of damages in excess of actual compensation was de-

fined by the Supreme Court of the United States in *Ry. Co.* v. *Quigley,* 21 Howard 202 (214) as follows: ''But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word implies that the act complained of was conceived in the spirit of mischief, or of criminal indifference to civil obligations.'' This definition is quoted in *Jopling* v. *Imp. Co.,* 70 W. Va. 670, which case declares that ''A wrongful act done under a *bona fide* claim of right and without malice in any form constitutes no basis'' for exemplary damages.

Under the cases cited, the facts in the present case do not warrant the theory of malice. No previous ill feeling is shown to have existed between the plaintiff and the brakeman. The order given the girls by the brakeman was not voluntary on his part. He was simply obeying the command of his superior officer. He did not single out plaintiff in giving the order. He addressed all the girls in the coach. He neither said nor did anything to plaintiff until she refused to comply with that order. He did not start with her in clearing the car. No notice had apparently been taken of her by him until he arrived at the seat she was occupying in defiance of his request, and until she, according to her own testimony, told him not to touch her. There is no evidence that he turned the other cheek when she slapped him, but it does appear that he did not resent the slap, and that he paid no further attention to her after she started to leave the extra car.

The situation was simply this: the plaintiff (at the time in her menstrual period) was in a nervous and irritable condition which the brakeman did not realize and which he failed to treat tactfully. In pulling the plaintiff from her seat, however, he was acting under his admitted right to clear the extra coach of a recalcitrant passenger. He may have been both rude and rough in the performance of this right, but the evidence does not indicate that his conduct or language was ''conceived in the spirit of mischief or of criminal indifference'' to her rights, or with intent to injure or oppress her.

It was therefore error to submit the case to the jury upon the theory of malice and punitive damages.

The judgment of the lower court will therefore be reversed, the verdict of the jury set aside, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*