BAYARD F. ENNIS

*v.*

D. EARL BRAWLEY

(No. 9804)

Submitted October 1, 1946. Decided December 17, 1946.

*B. J. Pettigrew* and *Beverley Broun,* for plaintiff in error.

*John V. Ray, Robert E. Stealey, Robert S. Spilman, Payne, Minor & Ray* and *Spilman, Thomas & Battle,* for defendant in error.

KENNA, PRESIDENT:

In this action of trespass on the case Bayard F. Ennis sought to recover from D. Earl Brawley the sum of $10,-000.00 by way of compensatory and exemplary damages by reason of an unlawful assault suffered by the plaintiff at the hands of the defendant in the Kanawha County Court House on June 20, 1945. To a judgment of $3,001.-00 the defendant below was granted this writ of error.

Under Code, 56-5-2, the sum of $25.00 was paid into court accompanied by an appropriate plea, to which the demurrer of the plaintiff was overruled, the plaintiff then declining to accept the payment which was not withdrawn but remained in the hands of the court. This plainly constituted an admission of liability for compensatory damages and left the quantum of compensatory and the question of whether punitive damages could be awarded and if so its quantum, the only questions going to the jury upon submission.

The assignments of error briefed and submitted are:

(a) The sum included in the verdict as punitive damages is grossly excessive;

(b) The court erred in refusing to permit the defendant to show the falsity of the newspaper article written by the plaintiff that provoked the attack giving rise to the cause of action;

(c) The trial court erred in admitting hearsay testimony over the objection of the defendant;

(d) The court erred in giving plaintiff's instruction No. 2 as modified;

(e) The court erred in giving plaintiff's instruction No. 6;

(f) The court erred in refusing to give defendant's instructions Nos. 2 as offered, 4, 7 and 8, and in giving plaintiff's instruction No. 4; and

(g) The verdict is contrary to the law and the evidence.

In order to understand the background upon which the assignments of error rest, the last will be considered first, remembering that in the light of the verdict questions of doubt created by a conflict of testimony are to be resolved in favor of the defendant in error.

D. Earl Brawley was and is Sheriff of Kanawha County. Bayard F. Ennis was a reporter of The Charleston

Gazette, to whom was assigned the duty of "covering" the court house daily. On the 14th day of June, 1945, the first edition of The Gazette, bearing date the 15th and released at about eight o'clock the evening of the 14th, carried an article written by Ennis stating, in substance, that "it was learned yesterday" that Edgar C. Bourne, a Lieutenant Detective of the Charleston Police Force then under suspension, due to the fact that he was then under indictment for extortion, "may become a deputy sheriff", and that the County Court then had the approval of his appointment under consideration. At the time the article was published Brawley was not in Charleston and he testified that he heard nothing concerning it until his return in the early afternoon of June 20. The account's appearance brought prompt denials from Assistant Sheriff Luther Carson, President of the Kanawha County Court Mont L. Cavender, as well as from Bourne. Sheriff Brawley was in Jeannette, Pennsylvania, visiting relatives of Mrs. Brawley, having left Charleston on the 11th of June. The only person in his office who was informed as to where he could be located was Office Deputy Burkhart. Brawley says that the first information he had concerning the article was upon his return to Charleston when he pulled up in front of the jail in the early afternoon of June 20. At that time Luther Carson and two or three road deputies hurried to his car and asked him to explain Bourne's appointment. According to his testimony Brawley, angered, then rushed into the jail, where the jailer, Estil Melton, handed him the paper containing the article, which he then read. He says that the article made him more angry and that he started from the jail to his office in the court house in order to telephone Ennis at the office of The Charleston Gazette and demand an explanation. As he was walking through the corridor leading to his office he looked through the glass door at the entrance of the County Court offices and saw Ennis seated in the private office of President Cavender. He immediately went into Commissioner Cavender's office and demanded of Ennis if he had written the "damn lie" concerning the appoint-

ment of Bourne and being told that Ennis had written the article in question he asked Ennis why he hadn't had the statement of the article verified in his office before publication and was simply told that it came from a reliable source. Brawley says that he was quite angry when he left the county jail and that his encounter with Ennis made him still angrier. Ennis was seated and Brawley says that he took him by the shoulder and shook him. He denies that he choked Ennis or that he struck him with his fist. He does say that he slapped him with his open hand two or three times.

Ennis' account of the attack is quite different. He testifies that he was in Cavender's office at around one-thirty in the afternoon attending to his usual duties when Sheriff Brawley came in and demanded if he were "the guy" that had written the article in question. Being told that he was, Brawley stated that he ought to kill him and that he intended to do so at that particular moment. This was followed by Brawley's reaching over and gripping Ennis' throat with his two hands and choking him severely in addition to shaking him so that his glasses fell to the floor, Ennis being very near sighted.

While that was occuring Commissioner Cavender arose and told Brawley: "You can't do that." Ennis says that Brawley's attack was momentarily interrupted so that he, Ennis, leaned forward with his head in his hands, Brawley having released his throat. Thereupon, according to Ennis' account, Brawley returned to the attack and pummeled him with his fists on the shoulder and back, leaving bruises on his body. Cavender again told Brawley that he could not do that and he and a truck driver named Ralph C. Frasher, who was also in Cavender's office, took Sheriff Brawley by the arms and led him from Cavender's office.

There is considerable conflict in the testimony that we think need not be specifically mentioned, such as admissions against interest or contradictions concerning Sheriff Brawley's testimony that he did not choke nor

strike the plaintiff with his fist, whether Ennis was bleeding from the lower lip when he left Cavender's office and went to that of Prosecuting Attorney Frank Taylor, what the purpose of his call at the latter's office was, et cetera. We believe that in the light of our decision that the assigned points of error can be reduced to three principal questions:

1. Under the law of West Virginia is it necessary that a verdict for punitive damages bear a reasonable proportion in amount to the compensatory damages awarded by the same verdict and if so, does the amount of $1.00 compensatory damages and $3,000.00 punitive damages, shown by the answers of special interrogatories propounded to the jury, bear such a reasonable proportion?

2. Did the court err in refusing to permit the defendant below to introduce evidence that the newspaper article written by Ennis was false in its statement of fact; and

3. Did the court err in permitting testimony to be introduced concerning a statement alleged to have been made by Luther Carson, Assistant Sheriff, to the effect that he, Carson, had talked to Sheriff Brawley on a long distance call to Jeanette, Pennsylvania, the night of June 14, the testimony being for the purpose of showing that Brawley had had a "cooling off period" of five or six days before the encounter with Ennis.

We are of opinion that settled law of this State does require something more than nominal damages in order to support an award of exemplary damages for the reason that if the plaintiff suffered no injuries of any kind in the eyes of the jury it is the function of the criminal law, not the civil law, in the proper circumstances to inflict deserved punishment upon the defendant. A finding of nominal damages means, in effect, that the defendant, though guilty of the wanton disregard of the rights of others, has done no injury. However, a person who comes to court and obtains redress of his personal grievances by way of substantial recovery of actual damages

—mental, physical, or otherwise—will be permitted to mulct the defendant if he establishes that his injuries were inflicted in wanton disregard of his rights, the law thus recognizing a culpability approaching the criminal that may exist in the commission of a tort and the propriety of punishing it in a civil action when it results in substantial injury to another.

The plaintiff below, defendant in error, cites as sustaining its position a number of cases of assault and battery from this and other jurisdictions where both compensatory and exemplary damages have been sought and alleged, in which verdicts equal to, or greater than, the verdict in the case at bar have been upheld on writ of error, among them the West Virginia cases of *Hunt* v. *Di Bacco*, 69 W. Va. 449, 71 S. E. 584, the verdict being for the amount of $1,579.00 and *Jones* v. *Hebdo*, 88 W. Va. 386, 106 S. E. 898, the verdict being for $2,725-.00. With a few exceptions the cases cited, including the two West Virginia cases, are cases in which the juries did not separate, in answer to special interrogatories or otherwise, the amount of their verdict based upon compensatory damages from its amount based upon exemplary damages, and consequently could not concern the immediate question before the Court in the case at bar, which is the fair proportion between compensatory and punitive damages contended by the plaintiff in error, defendant below, as being the principle upon which reversal is sought.

The exceptions referred to above are *Shea* v. *Cassidy*, 257 Ill. App. 557, and *Lyons* v. *St. Joseph Belt Ry. Co,.* 232 Mo. App. 575, 84 S. W. 2d 933. The *Shea* case is an evident miscitation, because the statement of the defendant in error's brief that an award of $50.00 actual and $300.00 exemplary damages for an assault by officers was sustained is not borne out by referring to the case cited. The citation is to a case where $50,000 was the amount of the verdict, the judgment of $30,000, after a remittitur of $20,000, being sustained on writ of error. The case involved the vicious shooting by the defendant

of a suitor of his daughter and the jury was not required to state the amount of their verdict that was compensatory nor the amount that was punitive. The *Lyons* case did involve, after a remittitur, judgment on a verdict of one dollar actual damage and $4,000 punitive damages. Of course, if the amounts alone are considered it would seem that they are totally out of proportion, since Missouri is a jurisdiction in which the rule of proportionate recovery of compensatory and exemplary damages is in effect. However, in approving the verdict the Kansas City Court of Appeals, not a court of last resort, had this to say:

"While it may be true that ordinarily a verdict for punitive damages should not be altogether disproportionate to the amount of actual damages returned, yet, in this case, the verdict for actual damages of one dollar only was returned under the instructions of the court, or the reason of plaintiff's inability to introduce competent evidence of greater damages; and therefore the actual damages assessed furnish no proper guide for the amount of the punitive damages to be returned."

Therefore, we do not regard either the *Shea* case or the *Lyons* case as being applicable to the exact question that is here presented by the plaintiff in error.

The principle of punitive damages has always been recognized in West Virginia. The thirteenth syllabus of the case of *Wilson* v. *City of Wheeling*, 19 W. Va. 323, fully deals with that right of recovery. In the case of *Ogg* v. *Murdock*, 25 W. Va. 139, a judgment for $475.00 was reversed because this Court was of the opinion that a part of the verdict was for the recovery of punitive damages and that the proof showed no wantonness nor malice that would justify an exemplary verdict. In *Pegram* v. *Stortz*, 31 W. Va. 220, 6 S. E. 485, at page 343, Judge Green makes this statement:

"It is well settled, in cases arising under statutes similar to ours, that no exemplary damages can ever be given in any case, unless actual pecuniary loss has been sustained by injury to the persons, property, or means of support of the wife or plaintiff."

The *Pegram* case was for recovery resulting from the sale of alcoholic beverages to a known habitual drunkard under the statute then in effect. In *Beck v. Thompson*, 31 W. Va. 459, 7 S. E. 447, the first syllabus point reads as follows:

"In an action for trespass for an assault and battery damages can not be recovered for the purpose of punishing the defendant, but for compensation for the injury done by him; and in considering the *quantum* of damages the jury have a right to consider not only the physical injury and physical suffering, and expenses and loss of time and wages, but also the mental anguish, shame and dishonor suffered by the injured party."

The *Beck* case was followed by that of *Mayer v. Frobe*, 40 W. Va. 246, 22 S. E. 58, in the opinion of which, at page 259, the statement is made that to attempt to separate a recovery of exemplary damages from a recovery for mental pain and suffering is to attempt to draw "a distinction without a difference". In our opinion the *Beck* case and the *Mayer* case both contain loose statements that have given rise to a large part of the partial confusion which exists in this jurisdiction. In *Pennington v. Gillaspie*, 66 W. Va. 643, 66 S. E. 1009, the judgment was reversed, partly because the trial court had declined to submit to the jury two special interrogatories, the one concerning the amount of compensatory damages and the other the amount of exemplary damages, this Court stating:

"The same is true also as to exemplary damages, for we think such damages should bear some reasonable proportion to the actual damage done else they would be unreasonable and excessive, evincing partiality and prejudice on the part of the jury, so as to justify the court in setting the verdict aside. 23 Cyc. 327-331; *Stevens v. Friedman*, 58 W. Va. 78."

The case of *Turk v. Norfolk & Western Railway Company*, 75 W. Va. 623, 84 S. E. 569, was brought by a passenger for unlawful assault and imprisonment at the hands of the defendant through its employees, this Court

sustaining the judgment based upon a verdict for $500.-00 compensatory and $1,000.00 punitive damages and stating, in the course of the opinion, at page 632:

"We cannot say the damages awarded were excessive, nor do we think the punitive damages, under the facts and circumstances of this case, are disproportionate to the compensatory damages awarded."

The fifth syllabus in *Hess* v. *Marinari,* 81 W. Va. 500, 94 S. E. 968, reads as follows:

"Where punitive or exemplary damages are awarded, the same should bear some reasonable proportion to the actual damages shown, and where this is not the case, and no special reasons are shown for making an award in excess of such reasonable proportion, it indicates that the jury was controlled by passion, prejudice, or some other improper motive."

It will be noted that the wording of this syllabus would seem to justify the return of a verdict in figures entirely disproportionate if special reasons were shown therefor, not stating what the reasons might or could be. However, any confusion that might have resulted from the use of that language was dispelled by the ninth syllabus in *Pendleton* v. *Norfolk & Western Railway Co.,* 82 W. Va. 270, 95 S. E. 941, the opinion of which was prepared by Judge Ritz who also wrote the opinion in the *Hess* case. The syllabus last referred to reads as follows:

"Where in a civil action to recover damages for assault and battery the actual damages found by the jury are substantial as in this case, an award of punitive damages for ten times the amount of the actual damages awarded will not be sustained."

*O'Brien* v. *Snodgrass,* 123 W. Va. 483, 16 S. E. 2d 621, is one of the most recent cases that this Court has had before it that involves the question of punitive damages, and we wish to correct the first syllabus point in so far as it states that punitive damages consist of an amount awarded the plaintiff in punishment of the defendant *over and above* full compensation for all of the plaintiff's

injuries, since under our West Virginia cases punitive damages are arrived at by fixing an amount, which together with, and in reasonable proportion to, the amount of compensatory damages, in the judgment of the jury, will be sufficient to deter others from pursuing a like course of conduct. Under the principle enunciated by this Court, exemplary damages are not in addition to, but are inclusive of, compensatory damages. The statement in the *O'Brien* opinion to the effect that this Court in the *Pegram* case refused to allow exemplary damages we believe is also inaccurate, if intended to mean that this Court in that case repudiated the principle justifying a recovery of that nature. The *Pegram* case, in Syllabus 8 and in the discussion of exemplary damages in the opinion, recognizes that principle as established in this jurisdiction, but finds that the facts shown by that record do not justify a recovery of exemplary damages.

As stated, in the cases of *Ogg* v. *Murdock,* 25 W. Va. 139, and *Wilson* v. *City of Wheeling,* 19 W. Va. 323, recovery of exemplary damages in this jurisdiction was recognized in principle but not applied, the *Ogg* case being one in which no wantonness or actual malice was shown and no punitive recovery allowed, and the *Wilson* case having refused the recovery of exemplary damages because the case was brought against a municipal corporation. There is no West Virginia case repudiating the principle of recovery of exemplary damages.

In *Goddard* v. *Grand Trunk Railway,* 57 Me. 202, will be found a rather full discussion of the history of exemplary damages as an established common law principle, but since the *Goddard* opinion was written in 1869 it does not discuss the question of special interrogatories nor the rule that - exemplary damages must bear a reasonable proportion to the compensatory damages allowed.

It will be seen from the foregoing that this jurisdiction is committed to the principle that although exemplary damages are recoverable in a proper case the

amount thereof, or rather the aggregate of compensatory and exemplary damages, when divided by special interrogatories as here must be comprised of two figures which bear a reasonable proportion to each other, the compensatory damages having evidence to sustain them and the exemplary damages not being in a plainly disproportionate amount thereof. In *Pendleton* v. *Norfolk & Western Railway Company,* 82 W. Va. 270, 95 S. E. 941, which involved a recovery for assault and battery as here, an award of punitive damages of ten times the amount of substantial compensatory damages was set aside as being plainly disproportionate. Here the punitive recovery is three-thousand times the actual damages awarded. Certainly if there is a proportionate balance that is to be maintained concerning this type of verdict based upon special interrogatories it cannot be said that the verdict in this case comes within that rule. To so hold in our opinion would be to abandon what has become a settled principle in this jurisdiction. That we do not wish to do.

Our most recent case involving the principle is *Edna Toler* v. *C. C. Cassinelli* decided November 12, 1946, and not yet reported, the third syllabus of which reads as follows:

"A finding of compensatory damages by a jury is an indispensable predicate to a finding of exemplary or punitive damages, and damages awarded by way of punishment must bear a reasonable proportion to compensatory damages so found."

The opinion in the *Toler* case, prepared by Judge Lovins, cites and approves the *Hess* and *Pendleton* cases and in doing so reiterates the West Virginia rule to the effect that there must be a reasonable proportion between compensatory and punitive damages. We are of the opinion that compensatory damages of $1.00 and exemplary damages of three-thousand times that amount is clearly disproportionate.

The defendant in error advances the idea that this Court should overlook the verdict of the jury in so far as the finding of compensatory damages is concerned and should ascertain from the testimony whether there is a disproportion between the amount that could have been awarded as damages actually suffered by Ennis, and the sum awarded him by the jury as exemplary damages. This, we think, is a matter that could have been raised in the trial court, the defendant below having paid into court the sum of $25.00 and the verdict having found $1.00 as being adequate compensation for the wrong suffered. Payment into court in our opinion was an offer of compensatory damages only and as such was not, as is urged by the defendant in error, an admission of the allegations in the declaration upon which a recovery of exemplary damages was sought. The payment and accompanying plea in effect was the denial of liability beyond the sum of $25.00. Surely no exemplary damages were confessed by that offer and hence the allegations justifying their recovery are to be treated as denied, though there was no plea to the general issue.

We are of opinion that the Circuit Court was right in not permitting the defendant below to introduce proof tending to show that the article written by Ennis was false in its statement of facts. The purpose was to show that the plaintiff was partly to blame and if confined to the actual occurrence of the assault, testimony of that sort of course is relevant. Viewed as provocation, the defendant below was permitted to prove that it did provoke Brawley but to permit him to contend that the provocation was greater because of the falsity of the newspaper article, while it might be logically relevant, we believe would form a collateral issue calculated to distract and divert the attention of the jury. The scope of relevant proof rests, to a very large extent, in the sound discretion of the presiding judge. It must be bounded, and yet there are few strict rules to control it. In this case we are of the opinion that there has been no abuse of discretion.

Concerning the testimony that Assistant Sheriff Luther Carson made a statement in the office of The Charleston Daily Mail to the effect that he had talked with Sheriff Brawley on the night of June 14 informing him of the fact that the paper carrying this article was then on the streets, introduced for the purpose of showing that Brawley, after learning of the Ennis article's publication, had had a cooling off period of several days, we are of the opinion that its admission was plainly erroneous. and that its admissibility cannot rest upon its having been a declaration against interest by a person officially acting in lieu of Sheriff Brawley. This is not an action against the Sheriff of Kanawha County as such. It is against D. Earl Brawley individually. It is not contended that Carson was acting as Brawley's personal agent. What Carson said in the office of The Charleston Daily Mail is no evidence of its truth. It is merely hearsay. The rule might be otherwise if this action were against the Sheriff in his official capacity.

In view of the foregoing the judgment of the Circuit Court of Kanawha County is reversed, the verdict set aside and a new trial awarded the plaintiff in error.

*Judgment reversed; verdict set aside; new trial awarded.*

LOVINS, JUDGE, concurring:

I concur in the result, but I think the holding of the Court concerning the admissibility of testimony showing or tending to show the alleged falsity of the newspaper article written by plaintiff is erroneous.

Whether a proffered fact raises a collateral issue is to be tested by the rules of relevancy. Applying that rule, it is relevant and proper in actions for assault to show provocation in mitigation of exemplary damages; but such proof is not to be considered in lessening the amount of actual damages. *Royer* v. *Belcher,* 100 W. Va. 694, 131 S. E. 556. See *Tatnall* v. *Courtney,* VI Houst. (Del.), 434; 1 Jones on Evidence, Fourth Ed., Section 146. In an action to recover damages for an assault,

publication of a defamatory article by plaintiff therein may be shown in evidence to establish provocation of defendant, so as to mitigate exemplary damages; but it may not be considered in reduction of actual damages. *Marriott* v. *Williams,* 152 Cal. 705, 93 P. 875. Publication of false statements derogatory to a person are more provocative of anger than a truthful statement. If the article was false and injured the reputation of defendant, it was a relevant matter to be considered as showing the extent of defendant's provocation. If defendant was incensed, certainly it would tend to show that in the circumstances of this case he was actuated by passion rather than malice, and the jury was entitled to have the benefit of such proof.

Therefore, the proof tendered by defendant as to the falsity of the article written by plaintiff was relevant, raised no collateral issue, and should have been admitted for the purpose only of mitigating the exemplary damages claimed by plaintiff.