# CHARLESTON.

MORGAN HESS v. PATSY MARINARI *et al.*

Submitted January 15, 1918. Decided January 22, 1918.

1. DAMAGES—*Punitive Damages—Amount.*

   Punitive damages should not be awarded in any case where the amount of compensatory damages is adequate to punish the defendant; and in a case where such compensatory damages are not adequate for the purpose of punishment, only such additional amount should be awarded as, taken together with the compensatory damages, will sufficiently punish the defendant. (p. 503).

2. EVIDENCE—*General Character of Defendant—Admissibility—Criminal Intent.*

   Ordinarily in a civil suit the general character or reputation of the defendant is not involved, and evidence thereof is not admissible; but where, in order to entitle the plaintiff to the recovery sought, it is necessary to establish that the defendant acted with criminal intent, it is proper for him to introduce evidence of his general good character as to the element or feature thereof involved in the charge against him, for the purpose of rebutting the proof showing, or tending to show, criminal intent. (p. 505).

3. DAMAGES—*Punitive Damages—Evidence—Character of Defendant.*

   In a civil suit, where a recovery of punitive or exemplary damages is sought, it is proper for the defendant to prove his general

good character in the particular in which the offense charged against him attacks it, as a guide to the jury in determining what amount would be adequate to punish him for the offense charged.   (p. 505).

4.  SAME—*Punitive Damages—Amount—Evidence.*

The verdict of a jury for punitive damages largely in excess of what would be sufficient to punish the average or ordinary person for the offense alleged, must be supported by some evidence showing that because of the pecuniary condition of the defendant, or for some other reason such allowance was necessary for his adequate punishment.   (p. 507).

5.  SAME—*Punitive Damages—Amount.*

Where punitive or exemplary damages are awarded, the same should bear some reasonable proportion to the actual damages shown, and where this is not the case, and no special reasons are shown for making an award in excess of such reasonable proportion, it indicates that the jury was controlled by passion, prejudice, or some other improper motive.   (p. 507).

Error to Circuit Court, McDowell County.

Action by Morgan Hess against Patsy Marinari and others. Judgment for plaintiff, and defendants bring error.   Reversed and remanded for a new trial.

*Reversed and remanded.*

*strother, Taylor & Taylor* and *Anderson, Strother, Hughes & Curd,* for plaintiffs in error.

*Joseph M. Crockett,* and *Sanders & Crockett,* for defendant in error.

RITZ, JUDGE:

This suit is prosecuted for the purpose of recovering damages for an assault alleged to have been committed by the defendants upon the plaintiff.   The defendant Patsy Marinari owned and conducted a store, and his co-defendant Consino Constantino was employed by Marinari as a salesman in the store.   On the evening that the assault complained of is alleged to have been committed there was quite a number of people congregated in Marinari's store, most of whom appear to have been Italians, to which race both Marinari and Constantino belonged.   The plaintiff, together with three or

four other Americans, entered the store, and according to his contention he purchased some cider, and after paying for it left the parties with whom he had entered the store and went to playing a slot machine on the opposite side of the room. Shortly after he began to play the slot machine he says he heard a disturbance on the opposite side of the room where he had left his companions, including his brother, and heard somebody present call another a liar. He went across the room to see about the trouble. About that time Marinari, who had theretofore been engaged back of the counter, called Constantino, and after saying something to him which the plaintiff did not understand, inasmuch as it was in the Italian language, picked up the butcher's cleaver which was lying on the meat block, and Constantino picked up a butcher knife, and Marinari commanded the parties in the store to vacate, announcing that he wanted no disturbance in his store; that immediately upon making this announcement he and Constantino passed through a gate or door in the counter; that before the plaintiff had opportunity to get out of the store Marinari struck him across the shoulder with the sharp end of the meat cleaver, and again when he had about reached the door struck him with the cleaver upon the shoulder, and after he had gotten outside Constantino cut him in the back with the butcher knife, making two severe wounds. It appears that a considerable quarrel or row occurred outside of the store after all of the parties had left it, in which at least one shot was fired and a great many stones were thrown. What else transpired is not clear. Marinari on his part admits that he did pick up the cleaver, but contends that he never struck the defendant with it, and it is contended by the defendants that whatever injuries were received by the plaintiff were received in the row outside of the store. There is evidence to support each contention. The jury found for the plaintiff and fixed his damages at the sum of nine thousand dollars, upon which verdict judgment was rendered. This writ of error challenges the rulings of the court in the rejection of certain evidence offered by the defendant, in the giving of instructions

to the jury, and in the refusal of the court to set aside the
verdict of the jury upon the ground that it is excessive.

Instruction No. 2 given on behalf of the plaintiff, which
action of the court is complained of as error, is as follows:
"The court instructs the jury that if from the evidence they
find the defendants or either of them guilty, that then in es-
timating the plaintiff's damages, they may take into consid-
eration the physical pain and suffering and mental anguish,
mortification, and humiliation and suffering endured by the
plaintiff by reason of the assault and battery upon him; and
the court further instructs the jury that if they believe from
the evidence that the assault and battery upon the plaintiff,
if they believe there was such committed, was done malicious-
ly, willfully, wantonly, and in utter disregard of plaintiff's
rights, that the jury may, in their discretion, in addition to
compensatory damages, give punitive or exemplary damages
against the defendant as a punishment to them, to prevent
them from repeating like offenses, and also to prevent others'
from committing like offenses." The objection urged to
this instruction is that it permitted the jury in fixing the
*quantum* of damages to ascertain: first, what damages would
compensate the plaintiff for the injury he received; and sec-
ond, if they decided to award exemplary damages, to ascer-
tain what amount would be sufficient to punish the defen-
dants for the alleged assault, and to add these two amounts
together as their verdict. It cannot be denied that this is
the effect of the instruction. Under our holdings compen-
satory damages include allowances for mental anguish and
pain and suffering, and for this reason there is very little
occasion for the allowance of exemplary damages. Dam-
ages called exemplary or punitive damages are more fre-
quently allowed in those jurisdictions where compensatory
damages do not include the items of mental anguish, pain and
suffering, but only actual pecuniary loss, and are justified
largely upon the ground that they are a compensation to
the party for the mental anguish, pain and suffering en-
dured by him. In this jurisdiction all such items of dam-
ages are included under the head of compensation, and what-
ever may be allowed by a jury as exemplary or punitive dam-

ages is something strictly as punishment, something to which the plaintiff is in no wise entitled as a compensation, either for any actual pecuniary loss, or for any pain suffered, or humiliation which he may have endured. In a case like this it will be borne in mind that all damages inflicted upon the defendant are purely exemplary or in the way of punishment. He gets nothing, and even to the extent that damages are awarded as compensation to the plaintiff for the injury he receives, they also accomplish the purpose of punishing the defendant, so that it is quite clear that where the damages found by the jury as compensation for the injury inflicted are sufficient of themselves to punish the defendant for the wrong he has done, in a case in which punishment is proper, no additional damages should be awarded for that purpose. The plaintiff has no right to it; he is fully compensated, and if the defendant is fully punished by the amount awarded as compensation there is no reason for adding anything to the amount thus ascertained. From this it will be seen that before there can be any award of punitive or exemplary damages it must be first ascertained by the jury that the award of compensatory damages is insufficient for the purpose of punishment. Even then, should the jury determine that it is a proper case for the award of punitive damages, there should only be added to these compensatory damages such sum as will make the whole sufficient for punishment. In other words, the first inquiry, if the jury finds there is a right to recover, would be, how much is the plaintiff entitled to as compensation? Second, is this a case in which exemplary damages are proper to be allowed? Third, if so, are the compensatory damages ascertained sufficient as a punishment to the defendant? If they are sufficient, that is the end of the inquiry, and the verdict should be for the amount the plaintiff is entitled to recover as compensation; but, should the jury be of opinion that this is not sufficient to adequately punish the defendant, then the next and last inquiry is, how much in addition to the compensatory damages would be required to make the punishment adequate? When this amount is determined and added to the amount fixed as compensation, the aggregate should be the jury's

verdict. *Claiborne* v. *Ry. Co.* 46 W. Va. 363; *Allen* v. *Lopinsky*, 81 W. Va. 13, 94 S. E. 369. The instruction given in this case is a clear deviation from the rule lad down in the above cited cases. This instruction would allow the jury to add to the compensatory damages an additional amount sufficient for punishment, even though the compensatory damages found might be entirely sufficient for that purpose.

It is insisted by the defendant Marinari that the court erred in refusing to admit evidence offered by him to show that he was a man of good character for peace and quietude. The general rule is that evidence of the good character of the defendant is not admissible in a civil case, but is this rule of universal application? It must be borne in mind that in this case the plaintiff was seeking to recover and did recover a verdict for very heavy punitive damages. In order for him to recover such damages it was necessary for the jury to believe that the defendant had acted with malice toward the plaintiff; in other words, the jury would have to believe the very same things that would have to be shown in order to find him guilty of a criminal offense. What good reason is there for admitting evidence of character in a criminal case to overcome the evidence of criminal intent and rejecting it in a civil case in which the very same intent has to be established in order to recovery? We can see no good reason for admitting it in the one case that does not exist in the other. Evidence of good character of the defendant is admitted in all criminal cases where the question of criminal intent is one to be found by the jury, upon the theory that it bears upon that question, and where in a civil case it is necessary that the jury find that the defendant acted with criminal intent there is no good reason why he should not be allowed to prove his good character in the respect which it is necessarily questioned by charging him with the offense. Professor Wigmore in his very learned and philosophical treatise on the Law of Evidence, at §64, after laying down the general rule that evidence of character is not ordinarily admitted in civil cases, and discussing the reasons thereof, comes to the conclusion that there may be exceptions to that rule. He says:—''It is

possible, however, to maintain that the reasons of policy should be yielded to in ordinary civil cases only; and that where a moral intent is marked and prominent in the nature of the issue, the defendant's good moral character should be received as in criminal cases. This view has in more modern opinions seemed to gain ground, and if only it can be phrased in a definite rule, it is well worth recognizing.'' So in *Hein* v. *Holdridge*, 78 Minn. 468, 81 N. W. 532, it was said by Chief Justice Start, speaking of the admission of evidence of good character in a civil case :—''Inasmuch as the general rule is not based upon any philosophical reason, but is merely one of convenience, it ought not to be applied to cases where justice to the defendant requires that the inconvenience arising from a confusion of the issues should be disregarded, and he be permitted to give evidence of his previous good character; or, in other words, such evidence ought to be received in a civil action when it is of a character to bring it within all of the reasons for admitting such evidence in criminal cases.'' See also *Goldsmith* v. *Joy*, 61 Vt. 488, 15 Am. St. Rep. 923; and *Lander* v. *Seaver*, 32 Vt. 114, 76 Am. Dec. 156. We think these authorities correctly propound the law governing the admission of this class of evidence, and we conclude that where it is necessary to the recovery which the plaintiff seeks that he prove against the defendant facts which constitute a crime, and that in order to such recovery the defendant must have had criminal intent when he did the acts complained of, it is proper for the defendant to introduce character evidence such as was offered in this case for the purpose of overcoming the proof offered to show criminal intent.

There is another very good reason why this sort of evidence is admissible in a case like this where punitive damages are sought and recovered. Anything allowed to the plaintiff as damages in addition to what is necessary to compensate him for his injury is purely punishment to the defendant. It is true the damages which are allowed him as compensation are also punishment as far as the defendant is concerned, but whatever is allowed in addition to this is giving the plaintiff something to which he is in no wise entitled, except upon the

theory that the defendant ought to be punshed, and that the amount allowed as compensation is not sufficient for the purpose. How may the jury arrive at these punitive damages? What would be punishment for one man might be inadequate punishment for another. Surely the jury would not conclude that a man of good character for peace and quietude in the community should be punished by a fine as large as one who is a notorious bully. In fixing the punishment for crime, one of the very important elements to be considered is the subject of the punishment, and no reason is perceived why the jury should not be advised as to the character of a man who committed the acts complained of, not only for the purpose of weighing this evidence upon the question of criminal intent, or the malice charged against him, but upon the question of ascertaining the amount they think necessary to fine him in order to inflict adequate punishment.

It is earnestly insisted that the verdict in this case is grossly excessive, and that it should be set aside for that reason, if no other. Inasmuch as we are of the opinion that the case will have to be reversed for the reasons we have given above, it is not necessary for us to consider the question of excessive damages at any considerable length. In this case the amount of pecuniary loss shown is inconsiderable. The plaintiff testifies that he was unable to work at all for two weeks after the injury inflicted upon him, and for two weeks more he was unable to work at his regular employment. He did not show how much he lost by being detained from work during this time. He was attended by a surgeon it appears, but it does not appear from the record what expense he incurred in this regard. There is little of the element of compensation in this recovery of $9000.00. There is no evidence introduced in this case showing the standing of the defendant in the community, his wealth or social position, nor does anything appear that would indicate a necessity for imposing such an enormous fine upon him in order to punish him for this offense. Ordinarily the jury are the judges as to what will be an adequate punishment in a case where it is found that punitive damages may be allowed, but as stated by this court in *Pennington* v. *Gillaspie*, 66 W. Va. pp. 658-9:—

"The amount of actual damages found depended on the evidence and was subject to the control of the court below, on a motion for a new trial, and if within the jurisdiction of this Court, by us on writ of error. The same is true also as to exemplary damages, for we think such damages should bear some reasonable proportion to the actual damage done else they would be unreasonable and excessive, evincing partiality and prejudice on the part of the jury, so as to justify the court in setting the verdict aside." So in 13 Cyc. p. 119, it is stated:—"In assessing the amount of exemplary damages to be awarded, the jury should take into consideration the malice or wantonness of the act complained of, and all the particular circumstances which go to aggravate the case; but the damages awarded should bear some reasonable proportion to the real damages sustained. The amount is usually left to the discretion of the jury under instructions by the court. In case the damages as awarded are grossly excessive or indicate prejudice they may be set aside by the court." The amount of recovery allowed in this case as punitive damages is not sustained by any proof that the defendant would not be punished by awarding against him such damages as would be adequate to punish an ordinary man for a like offense. No peculiar circumstances are shown in connection with the character or habits or financial condition of the defendant which would warrant dealing with him differently from any other person for the same or a similar offense, and it may be generally said that in order to justify a recovery of punitive damages largely in excess of what might ordinarily be expected for punishment for the particular offense, some evidence must be introduced to show that the defendant's condition is so different from the ordinary person that it was necessary to award punitive damages against him in excess of what would ordinarily be sufficient for punishment for the acts complained of. 1 Sutherland on Damages, §404 etc.

Complaint is made by the plaintiff of two instructions given by the court on the motion of the defendant. We have examined these instructions, and we think there is nothing in them which would tend to mislead the jury to the prejudice

of the plaintiff, and that they correctly state propositions of law applicable to the case.

Criticism is made of the action of the court in refusing to give defendants' instructions Nos. 5 and 6. Instruction No. 5 is as follows: "The Court instructs the jury that one in his own house or place of business is not obliged or required to stand and take without resistence, even the slight assaults of an intruder, trespasser or licensee upon himself, his family or servants until he believes and has reason to believe that he, they or one of them, is about to sustain some great bodily harm before resorting to force and if you believe from the evidence that Morgan Hess or his companions in Marinari's house and place of business assaulted or attempted to assault Marinari, his agents or servants therein, then Marinari had the right to resort to force in repelling the assaults and in ejecting the plaintiff and his associates from his house and place of business." Upon this phase of the case defendants' instruction No. 1 fully informs the jury of their rights in the premises. The vice of this instruction is that it refers to an assault upon the defendant, his agents or servants. There is no evidence of any assault being attempted upon the defendant Marinari. Instruction No. 1 confines the reference to the assault to the agents or servants based upon the evidence which had been presented to the jury, and gave the defendants all they were entitled to on this phase of the case.

Defendants' instruction 6 is in the following language: "The Court instructs the jury that if you believe from the evidence that Morgan Hess and his companions were disorderly in the store of Marinari, then Marinari had the right to eject them from the store, and in so doing to use such force as was necessary for that purpose." This instruction is rather abstract in its statement and might have a tendency to mislead the jury in this, that it might be implied from it, and could well be implied from it, that upon a disorder arising in the store the defendant would have the right to proceed by force to evict those participating in it. We think it would be his duty to command them to vacate his premises, and upon their refusal to comply with this demand, after giving them reasonable time to do so, he could then, of course, use such

force, and only such force as was necessary to put them off his premises. No error was committed by the court in rejecting this instruction.

We reverse the judgment of the circuit court of McDowell County, set aside the verdict of the jury, and remand the cause for a new trial.

*Reversed and remanded.*