SANDRA LEE HENSLEY, *et al.*

*v.*

THE ERIE INSURANCE CO.

(No. CC917)

Decided October 20, 1981.

*Ralph C. Dusic, Jr.* for plaintiffs.

*Andrew J. Goodwin* for defendants.

MILLER, JUSTICE:

This certified question comes from the Circuit Court of Kanawha County. We are asked to decide whether "[i]n an action to recover excess judgments over the insurance coverage available ... the plaintiffs [may] recover punitive damages awarded against the insured in the original action." The certified question assumes the right of an injured plaintiff to bring an excess suit against the defendant's insurance carrier.[1] The trial court held that payment by the insurance company of the punitive damages awarded against the insured was improper as it violated the public policy which prohibited an insured from shifting the payment of punitive damages to his insurance company. This public policy argument rests on the further premise that punitive damages are solely designed to punish and deter the wrongdoer, and, if he is able to shift the payment of punitive damages to his insurance carrier, he escapes the punishment. For the reasons stated herein, we reverse the trial court.

The plaintiffs, Sandra Hensley and Claudia Mathews, received personal injuries as a result of an automobile accident. The defendant in the underlying personal injury suit, Gary Lewis, was insured by The Erie Insurance

---

[1] The trial court, in a well-reasoned opinion, noted that this Court had not decided whether the plaintiff in a tort action could bring a direct suit against the defendant's insurance carrier for the excess damages recovered over the insurance limits. This type of excess suit is based on a claim that there was a wrongful failure to settle the case within the insurance limits. The trial court recognized that our only case involving an excess suit, *Speicher v. State Farm Mutual Automobile Insurance Company*, 151 W. Va. 292, 151 S.E.2d 684 (1966), did not address this issue nor the related issue of whether the standard of liability in such a suit is negligence or bad faith. The federal courts have concluded that such a cause of action does exist in this State. *E.g., Daniels v. Horace Mann Mutual Insurance Company*, 422 F.2d 87 (4th Cir. 1970). *See also, Vencill v. Continental Casualty Co.*, 433 F.Supp. 1371, 1377 (S.D. W. Va. 1977). The trial court relying on *Thompson v. Commercial Union Insurance Company of New York*, 250 So.2d 259 (Fla. 1971), took the position that the plaintiff could bring a direct action. *See Jenkins v. J.C. Penney Casualty Ins. Co.*, ___ W. Va. ___, 280 S.E.2d 252 (1981). This portion of the trial court's ruling was not certified to us.

Company. The accident occurred while Lewis, in an intoxicated condition, was operating his vehicle at a high rate of speed on the wrong side of a public road. He collided head-on with the car occupied by the plaintiffs.

The plaintiffs filed suit for compensatory and punitive damages. During the course of the litigation, plaintiffs discovered that the defendant Lewis had insurance coverage limits of ten thousand dollars ($10,000) for personal injuries to any one person, and a twenty thousand dollar ($20,000) total limit for all personal injuries arising from a single accident.[2] After discovery of these insurance limits, both plaintiffs, through their attorney, offered to settle for the ten thousand dollar ($10,000) limit available to each of them.

The insurance company declined to settle for the policy limits. Its insured, the defendant Lewis, made a demand that it settle within his policy limits, but the company also declined this request. After a jury trial, a verdict was returned for the plaintiff Hensley for twelve thousand dollars ($12,000) compensatory damages and punitive damages in the amount of seven thousand dollars ($7,000). The plaintiff Mathews recovered $17,300 in compensatory and seven thousand dollars ($7,000) in punitive damages.

The insurance company paid the policy limits on the judgment. Thereafter, the plaintiffs brought this direct action against the insurance company to recover the excess compensatory and punitive damages.

In an excess suit, the recovery of punitive damages initially awarded in an underlying negligence action depends upon whether an insurance carrier may be held liable for punitive damages under the language of its insurance contract. If this liability is found, then we must determine whether there is some public policy against insurance coverage for punitive damages.

---

[2] The property damage limit was five thousand dollars ($5,000) but it is not in issue here.

Most courts which have considered a liability policy with language that is similar to the provisions in the present case hold that coverage is available for punitive damages arising out of gross, reckless or wanton negligence but not for an intentional tort. These decisions focus upon policy language to the effect that the insurance company will "[pay] on behalf of the Insured *all sums* which the Insured shall become legally obligated to pay as damages."[3] (Emphasis added) This "all sums" clause is then coupled with the general insurance law rule that a policy is liberally construed in favor of the policyholder and strictly against the insurer. The final inquiry is whether there is any specific exclusion in the policy for punitive damages; if not, coverage is found. A typical recitation of this analysis is found in *Abbie Uriguen Oldsmobile Buick, Inc. v. United States Fire Insurance,* 95 Idaho 501, 507, 511 P.2d 783, 789 (1973):

> "We point out that the policy provisions herein make no distinction as between actual and punitive damages. Punitive damages are not specifically excluded from the policy language. Under the provision of the policy the company promises to pay on behalf of the insured *all* sums which the insured shall be legally obligated to pay as *damages* caused by the use of any automobile. The law is clear in Idaho that insurance policies are to be construed most liberally in favor of recovery."[4] (Emphasis in original)

---

[3] This quotation is the language from the policy in the present case and appears to be language commonly used in liability insurance policies. Note, *An Overview of the Insurability of Punitive Damages Under General Liability Policies,* 33 Baylor L. Rev. 203 (1981).

[4] *See also, Ridgway v. Gulf Life Insurance Company,* 578 F.2d 1026 (1978); *Employers Ins. Co. of Alabama v. Brock,* 233 Ala. 551, 172 So. 671 (1937); *Price v. Hartford Accident & Indemnity Company,* 108 Ariz. 485, 502 P.2d 522 (1972); *Southern Farm Bureau Casualty Insurance Company v. Daniel,* 246 Ark. 849, 440 S.W.2d 582 (1969); *Tedesco v. Maryland Casualty Company,* 127 Conn. 533, 18 A.2d 357 (1941); *Greenwood Cemetery, Inc. v. Travelers Indemnity Company,* 238 Ga. 313, 232 S.E.2d 910 (1977); *Scott v. Instant Parking Incorporated,* 105 Ill. App.2d 133, 245 N.E.2d 124 (1969); *City of Cedar Rapids v. Northwestern National Insurance Company of Milwaukee, Wiscon-*

We also follow the general rule that: "An insurance policy which requires construction must be construed liberally in favor of the insured." Syllabus Point 3, *Polan v. Travelers Insurance Company,* 156 W. Va. 250, 192 S.E.2d 481 (1972). *See also, Broy v. Inland Mutual Insurance Company,* 160 W. Va. 138, 233 S.E.2d 131 (1977); *Thompson v. State Automobile Insurance Co.,* 122 W. Va. 551, 11 S.E.2d 849 (1940). This rule is but a tacit acknowledgment that the insurance policy is prepared by the company and therefore, the average policyholder has no opportunity to influence the policy language.

We note that the "all sums" clause in the policy is quite broad. It extends coverage for all sums that the insured is found legally obligated to pay arising from bodily injury.[5] This language does not limit or attempt to define the type of act which gives rise to the bodily injury. Bodily injury can occur from a grossly negligent act as well as an act predicated on ordinary negligence.

Our conclusion that coverage exists under the policy in the present case rests not only on the foregoing reasoning but additionally on the specific wording of a policy exclusion in the present case. This exclusion provided that the

---

*sin,* 304 N.W.2d 228 (Iowa 1981); *The Continental Insurance Companies v. Hancock,* 507 S.W.2d 146 (Ky. 1974); *Anthony v. Frith,* 394 So.2d 867 (Miss. 1981); *Harrell v. Travelers Indemnity Company,* 279 Or. 199, 567 P.2d 1013 (1977); *Morrell v. Lalonde,* 45 R.I. 112, 120 A. 435 (1923), *appeal dismissed sub nom., United States Fidelity & Guaranty Company v. Morrell,* 264 U.S. 572, 68 L.Ed. 855, 44 S.Ct. 401 (1924); *Carroway v. Johnson,* 245 S.C. 200, 139 S.E.2d 908 (1965); *Lazenby v. Universal Underwriters Insurance Company,* 214 Tenn. 639, 383 S.W.2d 1 (1964); *Dairyland County Mutual Insurance Company v. Wallgren,* 477 S.W.2d 341 (Tex. Civ. App. 1972); *Lipscombe v. Security Insurance Company of Hartford,* 213 Va. 81, 189 S.E.2d 320 (1972); 12 J. Appleman, *Insurance Law and Practice* § 7031 (1981).

[5] Most courts that have had occasion to construe the phrase "legally obligated to pay arising from bodily injury" conclude that it is any legally recognized damages arising from a bodily injury and includes consequential damages. *E.g., Southern Farm Bureau Casualty Insurance Company v. Daniel,* 246 Ark. 849, 440 S.W.2d 582 (1969) (punitive damages); *Carroway v. Johnson,* 245 S.C. 200, 139 S.E.2d 908 (1965) (punitive damages); 7A Am.Jur.2d *Automobile Insurance* §§ 426, 427 (1980); 8A J. Appleman, *Insurance Law and Practice* § 4893 (1981).

insurance company was not liable for "[d]amage caused intentionally by or at the direction of the Insured." By limiting its "all sums" general coverage clause to exclude only coverage for damages resulting from an intentional act of the insured, the company is deemed to have intended to cover punitive damages arising from gross, reckless or wanton negligence. Not only does the rule of strict construction against the insurance company apply but the familiar rule that the specific inclusion of one subject excludes all other is also applicable. This rule, although most frequently associated with the construction of statutes, *State ex rel. City of Charleston v. Hutchinson*, 154 W. Va. 585, 176 S.E.2d 691 (1970), also applies to contracts. *Harbert v. County Court of Harrison County*, 129 W. Va. 54, 64, 39 S.E.2d 177, 186 (1946); 2A *Sutherland Statutory Construction* §47.24 (1973).

Thus, we conclude that where, as here, the liability policy of an insurance company provides that it will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury and the policy only excludes damages caused intentionally by or at the direction of the insured, such policy will be deemed to cover punitive damages arising from bodily injury occasioned by gross, reckless or wanton negligence on the part of the insured.

The real controversy in this case rages over whether public policy should preclude the payment of punitive damages under an insurance policy.[6] Even in this area,

---

[6] There is a divergence of opinion by the commentators on the subject of recovery of punitive damages under insurance policies. Professor Prosser states: "If punitive damages are supported by any sound policy [punishment and deterrence], that policy would appear to demand that they shall not be covered by liability insurance." W. Prosser, *Handbook of the Law of Torts* §2 at p. 13 (4th ed. 1971). *See also*, Hall, *The Validity of Insurance Coverage for Punitive Damages—An Unresolved Question?*, 4 N. Mex. L. Rev. 65 (1973); Note, *Insurance for Punitive Damages: A Reevaluation*, 28 Hastings L. J. 431 (1976); Comment, *Public Policy Prohibits Insurance Indemnification Against Awards of Punitive Damages*, 63 Colum. L. Rev. 944 (1963). Among those holding an opposite view are: 7 J. Appleman, *Insurance Law and Practice* §4312 (Cum. Supp. 1972); Keeton, *Insur-*

however, there is some measure of accord. Most courts conclude that it is against public policy to permit insurance coverage for a purposeful or intentional tort.[7] The difference of opinion revolves around whether public policy should exclude insurance coverage for punitive damages founded upon gross, reckless or wanton negligence. On this issue, the modern trend is to permit recovery for punitive damages arising from gross, reckless or wanton negligence absent some specific exclusion of coverage for punitive damages in the policy.[8]

The leading case holding that public policy precludes insuring against punitive damages is *Northwestern National Casualty Company v. McNulty*, 307 F.2d 432 (5th Cir. 1962).[9] Factually, *McNulty* involved a drunk driver

---

*ance Law Rights at Variance with Policy Provisions* (Pts. I & II), 83 Harv. L. Rev. 961, 1281 (1970); Lambert, *The Case for Punitive Damages (Including Their Coverage by Liability Insurance)*, 35 ATLA L. J. 164 (1974); W. Zuger, *Insurance Coverage of Punitive Damages*, 53 N. Dak. L. Rev. 239 (1976); Note, *Punitive Damages and Liability Insurance: Theory, Reality and Practicality*, 9 Cumberland L. R. 487 (1978); Comment, *Public Policy Challenges the Insurance Policy: McNulty Rejected*, 18 So. Dak. L. Rev. 497 (1973).

[7] See cases cited in footnote 4, *supra*, and footnote 8, *infra*. Some of these cases turn on policy language and do not analyze in any detail the difference between intentional torts and those arising from gross negligence.

[8] See cases cited in footnote 4 which hold that punitive damages arising from gross negligence can be recovered under the "all sums" clause unless there is a specific exclusion in the policy. For cases holding that public policy precludes coverage of punitive damages, see *Northwestern National Casualty Company v. McNulty*, 307 F.2d 432 (5th Cir. 1962); *American Surety Company of New York v. Gold*, 375 F.2d 523 (10th Cir. 1966), accord, *Guardianship of Estate of Smith*, 211 Kan. 397, 507 P.2d 189 (1973); *Nicholson v. American Fire and Casualty Insurance Company*, 177 So.2d 52 (Fla. App. 1965); *Crull v. Gleb*, 382 S.W.2d 17 (Mo. App. 1964); *Lo Rocco v. N. J. Manufacturers Indemnity Insurance Co.*, 82 N.J. Super. 323, 197 A.2d 591 (1964), aff'd mem., 42 N.J. 144, 199 A.2d 655, accord, *City of Newark v. Hartford Accident and Indemnity Company*, 134 N.J. Super. 537, 342 A.2d 513 (1975); *Teska v. Atlantic National Insurance Co.*, 59 Misc.2d 615, 300 N.Y.S.2d 375 (1969); *Edmond v. Liscio*, 209 Pa. Super. 200, 224 A.2d 793 (1966).

[9] *McNulty* was decided under Florida law. It should be noted that the public policy prohibition in regard to insurance against punitives

who lost control of his car and crashed into the rear of plaintiff's vehicle. The rationale of the *McNulty* decision was bottomed on the premise that punitive damages were meant to punish and deter the wrongdoer. Consequently, the court reasoned that the goals of deterrence and punishment would not be met if the wrongdoer could obtain insurance against punitive damages. A secondary theme of *McNulty* was that its rule would reduce the amount of drunk driving but this reasoning is merely a specific application of the general deterrence theory of punitive damages.

*McNulty* also mentioned certain "substantial practical difficulties, bearing on public policy, in allowing insurance against punitive damages." 307 F.2d at 441. Three such "difficulties" were listed but upon close analysis they do not merit legitimate consideration. The first such difficulty related to the conflict of interest between the insurance company and its insured over the amount of settlement when both compensatory and punitive damages were in issue. This argument is not very persuasive. Where punitive damages are permitted to be recovered under the insurance policy, the insurance company is only liable to its policy limits as to both types of damages. *Price v. Hartford Accident & Indemnity Company*, 108 Ariz. 485, 502 P.2d 522 (1972); *Harrell v. Travelers Indemnity Company*, 279 Or. 199, 567 P.2d 1013 (1977); *State v. Glens Falls Insurance Company*, 404 A.2d 101 (Vt. 1979). Even in the

---

in Florida is not without exception. In *Morrison v. Hugger*, 369 So.2d 614 (Fla. App. 1979), judgment for punitive damages was upheld against the insurance company of the employer based on a theory that his policy covered vicarious liability for acts of an intoxicated employee-driver involved in a fatal collision. *See also, Commercial Union Insurance Company of New York v. Reichard*, 404 F.2d 868 (5th Cir. 1968). Moreover, in *Ging v. American Liberty Insurance Company*, 423 F.2d 115 (5th Cir. 1970), the Fifth Circuit indicated that once an insurance company undertook the complete defense of its insured in a suit seeking both compensatory and punitive damages, the company had a duty to act in good faith toward its insured as to the entire undertaking. Therefore, it could be held liable in an excess suit for the punitive damages assessed against the insured even though punitive damages were a noncovered policy item.

ordinary case where a suit is filed for compensatory damages in an amount in excess of the policy limits a potential conflict of interest exists between the insured and his insurance company.[10]

A second difficulty was the supposed conflict between two rules: (1) in assessing punitive damages a defendant's financial situation may be introduced into evidence and (2) insurance of a defendant may not be mentioned in a case.[11] No one, however, contends that in such a situation the insurance company's financial condition or the existence of its coverage can be brought into evidence. The relevant inquiry remains the defendant's financial condition.

Finally, *McNulty* claimed that "[f]antastic results would be possible having no relation to making the injured party whole." 307 F.2d at 441. The concern here is simply that an award for punitive damages would be too high. We doubt that we will be confronted with any "fantastic results" by way of enormous sums awarded for punitive damages because in our jurisdiction, as well as others, punitive damages must ordinarily bear some reasonable relationship to compensatory damages. *Addair v. Huffman,* 156 W. Va. 592, 195 S.E.2d 739 (1973); *Spencer v. Steinbrecher,* 152 W. Va. 490, 164 S.E.2d 710 (1968); 22 Am.Jur.2d *Damages* §265 (1965).

Those courts rejecting the public policy arguments expressed in *McNulty* have tended to follow and expand on the reasoning of the Tennessee Supreme Court in *Lazenby*

---

[10] It is this conflict that ordinarily gives rise to an excess suit. The plaintiff-insured in such excess suit claims that the insurance company should have settled the underlying suit within the policy limits but chose not to do so, thereby improperly subjecting him to damages in excess of his policy limits. *See generally,* P. Magarick, *Excess Liability: Duties and Responsibilities of the Insurer* 115, *et seq.* (1976).

[11] In *Peck v. Bez,* 129 W. Va. 247, 40 S.E.2d 1 (1946), we recognized as relevant inquiry into the defendant's financial condition in determining the amount of punitive damages to be assessed against him. In *Coffindaffer v. Coffindaffer,* ___ W. Va. ___, 244 S.E.2d 338 (1978), we recognized that ordinarily evidence that the defendant is covered by liability insurance is not admissible in an action for personal injuries.

*v. Universal Underwriters Insurance Company*, 214 Tenn. 639, 383 S.W.2d 1 (1964). First, courts recognize that a substantial distinction exists in regard to the degree of culpability between an act done by the purposeful intent of the insured and an act based on gross negligence. Courts also recognize that permitting insurance coverage for acts of gross negligence will not increase the frequency of these acts anymore than the original extension of insurance coverage for negligent acts increased their frequency. *Harrell v. Travelers Indemnity Company*, 279 Or. 199, 567 P.2d 1013 (1977).[12]

Additionally, while gross, reckless or wanton negligence are difficult to precisely define, they are nonetheless species of negligence and therefore, from a public policy standpoint, should not be precluded from insurance coverage. Consequently, where the insurance carrier has broadly defined coverage through its "all sums" clause, the insured has a reasonable expectation of coverage for his acts of gross, reckless or wanton negligence, unless of course they are expressly excluded. Both *Price v. Hartford Accident & Indemnity Company*, 108 Ariz. 485, 502 P.2d 522 (1972), and *Harrell v. Travelers Indemnity Company*, 279 Or. 199, 567 P.2d 1013 (1977), express this view.[13]

---

[12] *Harrell* cites approvingly this statement from 6A *Corbin on Contracts* §1471 (1962):

" 'Liability insurance policies, taken out by employers, owners of automobiles, and others, are contracts for indemnity against consequences of tortious negligence on the part of servants and employees. *Such contracts are not made illegal by the fact that they provide for indemnity against consequences of the negligent conduct of the employer or owner himself. It is not believed that harmful negligence is made more probable by such indemnification:* * * *.' (Emphasis added)" 567 P.2d at 1016.

[13] Both cases acknowledge the source of the argument to be from J. Appleman, *Insurance Law and Practice*. The arguments acknowledged in *Harrell* and *Price* are based on older editions of Appleman's work. The argument is unchanged, however, in its latest expression: "Where the policy is one designed and sold to cover acts ordinarily insured under comprehensive liability, homeowners, and professional liability contracts—such as libel, slander, invasion of privacy, false arrest, false imprisonment, malicious prosecution, or others acts where punitive damages ordinarily are attendant

The decision in *Lazenby* also argues that the insurance contract itself presents a conflicting public policy in favor of the traditional right of freedom of contract and that courts ought not lightly interfere with this right. Additionally, the point is made in *Harrell* that permitting insurance coverage of punitive damages does not automatically mean that the insured "shifts" the burden of payment. Presumably, the insurance company will charge extra for such coverage. Finally, on the same point, it has also been noted that to the extent that the punitive damage award exceeds the insured's policy limits, there is no "shift" in payment of damages. *Price v. Hartford Accident & Indemnity Company, supra; Harrell v. Travelers Indemnity Company, supra; State v. Glens Falls Insurance Company, supra.*

Much of the difference of opinion in the public policy area may be attributable to a constricted view of the purpose of punitive damages. The usual rubric that punitive damages are designed to punish and deter the wrongdoer is an acceptable statement but it is not the only statement that can be made. To punish and deter may inform the wrongdoer why he must pay. However, it supplies no reason why the injured party obtains the benefit of such payment of punitive damages. Some courts have recognized that from the plaintiff's standpoint punitive damages are additional compensation for the egregious conduct that has been inflicted on the injured party. *E.g., Triangle Sheet Metal Works, Inc. v. Silver,* 154 Conn. 116, 222 A.2d 220 (1966); *Jolley v. Puregro Company,* 94 Idaho 702, 496 P.2d 939 (1972); *Turner v. Southern Excavation, Inc.,* 322 So.2d 326 (La. App. 1975), *citing Loeblich v. Garnier,* 113 So.2d 95 (La. App. 1959); *GAI Audio of New*

upon a recovery, the insurer of necessity must cover punitive damages (unless clearly and explicitly excepted), since they must be deemed contemplated by the parties. Otherwise, the policy is deceptive and purports to extend a coverage which is not present. In fact, the attempt to except punitive damages in such a situation would itself seem to be fraudulent and should be scrutinized with great care." 12 J. Appleman, *Insurance Law and Practice* §7031 (1981).

*York, Inc. v. Columbia Broadcasting System, Inc.*, 27 Md. App. 172, 340 A.2d 736 (1975); *Kewin v. Massachusetts Mutual Life Insurance Company*, 409 Mich. 401, 295 N.W.2d 50 (1980); *Peisner v. Detroit Free Press*, 68 Mich. App. 360, 242 N.W.2d 775 (1976);[14] *Kesler v. Rogers*, 542 P.2d 354 (Utah 1975).[15]

We have followed the traditional rule that punitive damages are awarded to punish the defendant. *Addair v. Huffman*, 156 W. Va. 592, 195 S.E.2d 739 (1973); *O'Brien v. Snodgrass*, 123 W. Va. 483, 16 S.E.2d 621 (1941); *Hess v. Marinari*, 81 W. Va. 500, 94 S.E. 968 (1918); *Mayer v. Frobe*, 40 W. Va. 246, 22 S.E. 58 (1895). In *Ennis v. Brawley*, 129 W. Va. 621, 630, 41 S.E.2d 680, 685 (1947), we recognized that punitive damages are also awarded "to deter others from pursuing a like course of conduct." There does not seem to be any reason to fail to acknowledge that the injured party does benefit from an award of punitive damages. We find nothing in our social or public policy that precludes this consideration when we evaluate the propriety of permitting coverage for punitive damages occasioned by gross, reckless or wanton negligence.

In the final analysis, we refuse to find that our public policy precludes insurance coverage for punitive damages arising from gross, reckless or wanton negligence. Such

[14] The Michigan court has apparently recognized that its "exemplary damages" are those "recoverable for injury to feelings and for the sense of indignity and humiliation resulting from injury maliciously and wantonly inflicted." *Ray v. City of Detroit, Department of Street Railways*, 67 Mich. App. 702, 704, 242 N.W.2d 494, 495 (1976). These damages are not necessarily considered punitive in this State. *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270, 276 (1978).

[15] Other reasons for punitive damages have been advanced. They encourage a plaintiff to bring an action where he might be discouraged by the cost of the action or by the inconvenience of a criminal proceeding. *Jolley v. Puregro Company*, 94 Idaho 702, 496 P.2d 939 (1972); *Walker v. Sheldon*, 10 N.Y.2d 401, 179 N.E.2d 497 (1961). Punitive damages provide a substitute for personal revenge by the wronged party. *Woodard v. City Stores Company*, 334 A.2d 189, 191 (D.C. 1975); *Security Aluminum Window Manufacturing Corp. v. Lehman Associates, Inc.*, 108 N.J. Super 137, 260 A.2d 248 (1970); *Harris v. Burnside*, 261 S.C. 190, 196, 199 S.E.2d 65, 68 (1973).

action rooted in negligence as distinguished from a purposeful or intentional tort does not in our opinion carry the degree of culpability that should foreclose the right to insurance coverage. We recognize that an insurance company may decline to insure against punitive damages by an express exclusion in its policy to that effect and to the extent that the insurance company exercises this option it is protected against payment of punitive damages. Even where coverage is extended, the company will be liable only to the extent of its policy limits unless it has failed to exercise the proper care in settling the claim. Finally, we believe the narrow claim that punitive damages rests solely on a theory of punishment of the defendant ignores practical reality. The law accords the plaintiff an extra measure of recovery by way of punitive damages for any number of reasons where the defendant has been found guilty of gross, reckless or wanton negligence.

By finding coverage under the policy in this case, we answer the certified question in the affirmative to the extent that the plaintiffs' complaint against the insurance company does state a cause of action. Whether the plaintiffs can develop at trial sufficient facts to prove that the insurance company failed in its obligation to settle the underlying personal injury suit is a matter not before us on this certification.

Having answered the certified question in the affirmative—that a cause of action does exist under the insurance policy in the present case for coverage for punitive damages assessed upon gross, reckless or wanton negligence—we reverse the ruling of the circuit court and remand the case for further proceedings.

*Ruling on Certified
Question Reversed and
Case Remanded.*