511 S.E.2d 498

**STATE of West Virginia ex rel. STATE AUTO INSURANCE COMPANY, Petitioner,**

v.

**Honorable Fred RISOVICH, II, Judge of the Circuit Court of Ohio County, and Melinda Kent, Individually, and Kristin Kent, a minor, By and Through Her Father and Next Friend, Roger Kent, and Roger Kent, Individually, Respondents.**

No. 25347.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 10, 1998.

Decided Dec. 11, 1998.

Anthony I. Werner, Lea W. Ridenhour, Bachmann, Hess, Bachmann & Garden, Wheeling, West Virginia, Attorneys for the Petitioner.

Joseph J. John, John Law Offices, Robert P. Fitzsimmons, Fitzsimmons Law Offices, Wheeling, West Virginia, Attorneys for Respondents, the Kents.

Jolyon W. McCamic, Charleston, West Virginia, Counsel for Amicus Curiae, West Virginia Trial Lawyers Association.

DAVIS, Chief Justice:

In this original proceeding in prohibition, the petitioner, State Auto Insurance Company, requests this Court to prohibit the respondent, the Honorable Fred Risovich, II, Judge of the Circuit Court of Ohio County, from enforcing his order of September 4, 1998, denying State Auto's motion for partial summary judgment. The issue raised in this petition is whether an insurer is required, under W. Va.Code § 33–6–31(b) (1998) (Supp.1998), to obtain a waiver of coverage for punitive damages before it may exclude such coverage from a policy for underinsured motorist coverage. We find that an insurer may exclude punitive damages coverage without first obtaining a waiver of that coverage. Consequently, we grant the writ.

I.

## FACTUAL AND PROCEDURAL HISTORY

On December 13, 1996, Melinda Kent and her seven-year-old daughter Kristin sustained injuries resulting from a head-on colli-

sion between their vehicle and a vehicle operated by Donald Forester.[1] In connection with the accident, Forester was charged with third offense driving under the influence, driving under the influence causing injury and driving on a suspended or revoked license.[2] He subsequently entered a plea agreement with the State, which was accepted by the circuit court. Pursuant to the plea agreement, Forester pleaded guilty to third offense driving under the influence and driving under the influence causing injury, and the charge of driving on a suspended or revoked license was dismissed.

On June 4, 1997, a civil lawsuit was filed in the Circuit Court of Ohio County against Donald Forester by Melinda Kent and her husband Roger Kent, who sued both on his own behalf and as next friend to his infant daughter Kristin [hereinafter collectively referred to as "the Kents"], respondents herein, seeking compensatory and punitive damages. The punitive damages sought are based primarily upon Forester's conduct in driving recklessly, while under the influence of alcohol and on a suspended or revoked license.

Pursuant to W. Va.Code § 33–6–31(d) (1995) (Repl.Vol.1996), a copy of the complaint against Forester was served upon the Kents' insurer, State Auto Insurance Company [hereinafter "State Auto"], petitioner herein, who provided them with underinsured motorist coverage.[3] After the lawsuit was filed, Mr. Forester's liability insurer, Dairyland Insurance Company, paid the limits of Forester's policy to the Kents and obtained a release freeing Mr. Forester from all liability for the collision. State Auto consented to this settlement, and waived its subrogation rights against Forester. Thereafter, the Kents sought relief, including an amount reflective of punitive damages, from State Auto as their underinsurance provider.[4]

State Auto filed a motion for partial summary judgment on the issue of punitive damages based upon an exclusion contained in the uninsured/underinsured portion of the policy it issued to the Kents, which stated: "[w]e do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for punitive or exemplary damages." The issue to be resolved by the circuit court in disposing of State Auto's summary judgment motion was whether State Auto's punitive damages exclusion violated W. Va.Code § 33–6–31(b) (1998) (Supp.1998),[5] which states in relevant part:

1. The accident report states that Donald Forester lost control of his vehicle, went left of center and struck the Kents' vehicle.

2. The Kents allege that Forester's license had been revoked due to his prior convictions of driving under the influence.

3. Under W. Va.Code § 33–6–31(d) (1995) (Repl.Vol.1996):

   Any insured intending to rely on the coverage required by subsection (b) of this section [(uninsured and underinsured motorist coverage)] shall, if any action be instituted against the owner or operator of an uninsured or underinsured motor vehicle, cause a copy of the summons and a copy of the complaint to be served upon the insurance company issuing the policy, in the manner prescribed by law, as though such insurance company were a named party defendant; such company shall thereafter have the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured motor vehicle or in its own name.

   W. Va.Code § 33–6–31 was amended in 1998, however the provision quoted above was not altered. *See* W. Va.Code § 33–6–31(d) (1998) (Supp.1998).

4. The limited record submitted in connection with this petition does not indicate whether the Kents are reasonably entitled to compensatory damages in excess of the amount they have received in settlement from Mr. Forester's liability insurer. Similarly, the record does not disclose whether State Auto has paid any benefits to the Kents under their policy for underinsured motorist coverage for any additional compensatory damages, beyond that which has been compensated by Mr. Forester's liability insurer, to which they may be entitled. In this regard, we note that:

   Where an uninsured or underinsured motorist insurance carrier fails to settle within its policy limits, it may be liable in a separate suit for the excess verdict returned by a jury for its failure to make a good faith settlement within its policy limits under the principles set out in *Shamblin v. Nationwide Mutual Insurance Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990).

   Syl. pt. 7, *Marshall v. Saseen,* 192 W.Va. 94, 450 S.E.2d 791 (1994).

5. An earlier version of W. Va.Code § 33–6–31(b) was in effect at the time of the accident in this case. *See* W. Va.Code § 33–6–31(b) (1995) (Repl.Vol.1996). However, because the above quoted provision is identical in both the 1995

such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured *all sums which he shall legally be entitled to recover as damages* from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy. . . .

(Emphasis added).

After oral argument on State Auto's motion for partial summary judgment, the Circuit Court of Ohio County, by order entered September 4, 1998, found that State Auto's exclusion of punitive damages violated W. Va.Code § 33–6–31(b), and denied the motion. The court explained:

State Auto's exclusion as to punitive damages is invalid and unenforceable as violative of W. Va.Code 33–6–31(b) under the specific facts of this case as State Auto has admitted that it did not offer the plaintiffs the opportunity to purchase underinsured motorist coverage which would include punitive damages.[6] Therefore, the mandate that the insurer provide and/or offer the insured coverage for *"all sums* which he shall legally be entitled to recover *as damages* from the owner or operator of an uninsured or underinsured motor vehicle . . .", which would include punitive damages, was not met and State Auto's exclusion therefore conflicts with the clear language of 33–6–31(b).

(Footnote added). State Auto then petitioned this Court for a writ of prohibition to prevent the enforcement of the September 4, 1998, order of the Circuit Court of Ohio County. We issued a rule to show cause and now grant the writ.

## II.

## WRIT OF PROHIBITION

We must first consider the threshold question of whether prohibition is proper in this instance. We have long held that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va.Code, 53–1–1." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver,* 160 W.Va. 314, 233 S.E.2d 425 (1977). *Accord* Syl. pt. 1, *Crawford v. Taylor,* 138 W.Va. 207, 75 S.E.2d 370 (1953). Here, State Auto complains that the circuit court exceeded its legitimate powers. In this regard, we have stated:

"In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance." Syllabus Point 1, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979).

Syl. pt. 1, *State ex rel. U.S. Fidelity and Guar. Co. v. Canady,* 194 W.Va. 431, 460 S.E.2d 677 (1995). Elaborating on *Hinkle v. Black,* we have explained:

The prohibition standard set out in Syllabus Point 1 of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), permits an original prohibition proceeding in this Court to correct substantial legal errors where the facts are undisputed and resolution of the errors is critical to the proper disposition of the case, thereby conserving costs to the parties and economizing judicial resources.

and 1998 versions of W. Va.Code § 33–6–31(b), we refer to this section's most recent, 1998, amendment throughout this opinion.

6. It is undisputed that State Auto did not offer the Kents the opportunity to purchase coverage for punitive damages.

Syl. pt. 1, *State ex rel. Allstate Ins. Co. v. Karl*, 190 W.Va. 176, 437 S.E.2d 749 (1993).[7]

Considering these authorities, we review the posture of the instant matter. The issue before us is whether, under W. Va.Code § 33–6–31(b), an insurer must obtain a waiver of coverage for punitive damages before it may exclude such coverage from a policy for underinsured motorist coverage. This issue presents us with a purely legal question, and the facts related to this issue are not disputed by the parties. Moreover, because the Kents have released Forester from all liability for the collision, and because State Auto has waived its subrogation rights against Forester, our decision to grant a writ of prohibition in this case precludes the necessity of addressing the issue of punitive damages during the trial in the circuit court. Finally, we note that, as State Auto points out, there is a split of authority on this issue between at least two of the circuit courts of this State and between two judges within one of these circuits.[8] Thus, we find prohibition proper in this instance.

## III.

## DISCUSSION

The focus of this case is whether the language included in W. Va.Code § 33–6–31(b), stating that a policy of motor vehicle liability insurance

> shall provide an option to the insured with appropriately adjusted premiums to pay the insured *all sums which he shall legally*

be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy....

(emphasis added), requires an insurer to obtain a waiver of coverage for punitive damages before it can properly exclude such damages from coverage.

We previously have held that "[i]nsurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes." Syl. pt. 3, *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989).

State Auto asserts that punitive or exemplary damages are intended to punish the tortfeasor or to set an example. Therefore, it argues, its exclusion of such damages from its underinsured motorist policy is not precluded by the public policy of this State and is not violative of the spirit and intent of the uninsured and underinsured motorist statutes.

The Kents respond that under section 33–6–31, an insurer must obtain a waiver of punitive damages coverage from its insured before it can exclude such damages from underinsured motorist coverage. Because W. Va.Code § 33–6–31 does not limit the

---

7. *Accord* Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996) ("In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.").

8. Contrary to the conclusion reached by the Honorable Judge Risovich in the instant case, the Honorable Judge Martin J. Gaughan, who also sits in the Circuit Court of Ohio County, has enforced policy language excluding recovery for punitive damages without expressly requiring a written waiver of such coverage. The Circuit Court of Preston County has concluded that an insurer must obtain a signed waiver of punitive damages from the insured in order to exclude such damages from an underinsured motorist coverage policy.

term "damages" to "compensatory damages" only, the Kents argue that it is clear that the Legislature did not intend to exclude punitive damages from uninsured/underinsured coverage. Furthermore, quoting from W. Va. Code § 33–6–31, the Kents submit that punitive damages are sums a person may "legally be entitled to recover as damages" from an underinsured motorist.

To resolve this issue, we must determine whether the exclusion of punitive damages from underinsured motorist coverage "conflict[s] with the spirit and intent of the uninsured and underinsured motorists statutes" Syl. pt. 3, *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92. We find it does not.

In *State Automobile Mutual Insurance Co. v. Youler*, we considered the herein disputed language of W. Va.Code § 33–6–31(b) and observed that:

> It is obvious from the "all sums … as damages" language of *W. Va.Code*, 33–6–31(b), as amended, that the legislature has articulated a public policy of full indemnification or compensation underlying both uninsured and underinsured motorist coverage in the State of West Virginia. That is, the preeminent public policy of this state in uninsured or underinsured motorist cases is that the injured person be *fully compensated* for his or her *damages* not compensated by a negligent tortfeasor, up to the limits of the uninsured or underinsured motorist coverage.

183 W.Va. 556, 564, 396 S.E.2d 737, 745 (1990). While the *Youler* Court utilized the generic term "damages" without specifying whether it was referring to compensatory or punitive damages, it employed that term only in clarifying its earlier statement that "the legislature has articulated a public policy of *full indemnification.*" *Id.* (emphasis added). To indemnify refers to "restor[ing] the victim of a loss, in whole or in part, by payment, repair, or replacement. … To make good; to compensate; to make reimbursement to one of a loss already incurred by him." *Black's Law Dictionary* 769 (6th ed.1990). *See also Webster's Third New International Dictionary of the English Language Unabridged* 1147 (1970) (defining "indemnify" as "to

make compensation to for incurred hurt or loss or damage").

Additionally, in an opinion including a brief overview of West Virginia insurance law, we have stated " ' "[i]n short, underinsured motorist coverage is intended to compensate parties for injuries caused by other motorists who are underinsured." ' " *Kronjaeger v. Buckeye Union Ins. Co.*, 200 W.Va. 570, 579, 490 S.E.2d 657, 666 (1997) (alteration in original) (citing *Castle v. Williamson*, 192 W.Va. 641, 644, 453 S.E.2d 624, 627 (1994) (quoting *Alexander v. State Auto. Mut. Ins. Co.*, 187 W.Va. 72, 79, 415 S.E.2d 618, 625 (1992))).

Moreover, we have explained that "[t]he purpose of optional underinsured motorist coverage is to enable the insured to protect himself, if he chooses to do so, against losses occasioned by the negligence of other drivers who are underinsured." *Deel*, 181 W.Va. at 463, 383 S.E.2d at 95. *Cf. Bell v. State Farm Mut. Auto. Ins. Co.*, 157 W.Va. 623, 627, 207 S.E.2d 147, 150 (1974) ("The uninsured motorist statute seeks to assure *at least minimum relief from the consequences of a loss* caused by an uninsured motorist. Because every citizen is exposed to the risk of loss, the Legislature has provided through the uninsured motorist statute that the burden of loss should be distributed among all owners of insured motor vehicles registered in West Virginia." (Emphasis added)).

■ These expressions of the public policy of West Virginia with regard to underinsured motorist coverage, and of the purpose or spirit and intent of W. Va.Code § 33–6–31, are clear and contemplate that underinsured motorist coverage will compensate an injured party for his or her losses incurred and injuries caused by other motorists who are underinsured. The compensation of an injured party for his or her losses is not the purpose of punitive damages.

> "Punitive or exemplary damages are such as, in a proper case, a jury may allow against the defendant by way of punishment for wilfulness, wantonness, malice, or other like aggravation of his wrong to the plaintiff, over and above full compensation for all injuries directly or indirectly result-

ing from such wrong." Syllabus Point 1, *O'Brien v. Snodgrass*, 123 W.Va. 483, 16 S.E.2d 621 (1941).

*Coleman v. Sopher*, 201 W.Va. 588, 602–03, 499 S.E.2d 592, 606–07 (1997) (citing Syl. pt. 4, *Harless v. First Nat'l Bank*, 169 W.Va. 673, 289 S.E.2d 692 (1982)). *Accord Hensley v. Erie Ins. Co.*, 168 W.Va. 172, 183, 283 S.E.2d 227, 233 (1981) (recognizing that "[w]e have followed the traditional rule that punitive damages are awarded to punish the defendant," and further observing that "punitive damages are also awarded 'to deter others from pursuing a like course of conduct.'" (citations omitted)). Thus, because punitive damages do not compensate an injured party for his or her losses, but rather are awarded over and above such losses, they are not included in the meaning of the term "damages" as contemplated by the language "all sums which he shall legally be entitled to recover as damages" used in W. Va.Code § 33–6–31(b). *See Burgess v. Porterfield*, 196 W.Va. 178, 185 n. 11, 469 S.E.2d 114, 121 n. 11 (1996) (observing that insurer "could have declined to insure against punitive damages by including an express exclusion to that effect in plaintiff's policy") (citing *Hensley v. Erie Ins. Co.*, 168 W.Va. at 183–84, 283 S.E.2d at 233).

■ Finally, we note that W. Va.Code § 33–6–31 includes a specific provision regarding exclusions, which states:

Nothing contained herein shall prevent any insurer from also offering benefits and limits other than those prescribed herein, *nor shall this section be construed as preventing any insurer from incorporating in such terms, conditions and exclusions as may be consistent with the premium charged.*

W. Va.Code § 33–6–31(k) (1998) (Supp.1998) (emphasis added).[9] We find that this provision lends further support to our conclusion that the public policy of this State and the spirit and intent of W. Va.Code § 33–6–31 do not preclude the exclusion of punitive damages.

■ Having determined that the exclusion of punitive damages is not prohibited by either public policy or by the spirit and intent of W. Va.Code § 33–6–31, we hold that under W. Va.Code § 33–6–31(b) (1998) (Supp.1998), an insurer is not required to obtain a waiver from its insured in order to exclude punitive damages from a policy for underinsured motorist coverage. However, if the insurer fails to expressly exclude punitive damages from its underinsured motorist policy, the policy will be deemed to cover such damages. *See* Syl. pt. 2, *Hensley v. Erie Ins. Co.*, 168 W.Va. 172, 283 S.E.2d 227 ("Where the liability policy of an insurance company provides that it will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury and the policy only excludes damages caused intentionally by or at the direction of the insured, such policy will be deemed to cover punitive damages arising from bodily injury occasioned by gross, reckless or wanton negligence on the part of the insured."); Syl. pt. 3, *id.* ("The public policy of this State does not preclude insurance coverage for punitive damages arising from gross, reckless or wanton negligence.").

## IV.

## CONCLUSION

For the foregoing reasons, we find that State Auto was not required to obtain a waiver of punitive damages coverage in order to exclude such coverage from the Kents' underinsured motorist policy. Because State Auto's exclusion of punitive damages was valid, the Circuit Court of Ohio County exceeded its legitimate powers by denying State Auto's motion for partial summary judgment based upon the court's conclusion that State Auto's exclusion for punitive dam-

---

9. W. Va.Code § 33–6–31(k) (1995) (Repl.Vol. 1996), which was in effect at the time of the accident underlying the proceedings below, is identical to the version of section 33–6–31(k) quoted above.

ages violated W. Va.Code § 33–6–31(b). Therefore, we grant the requested writ and hereby prohibit the Circuit Court of Ohio County from enforcing that portion of its order of September 4, 1998, denying State Auto's motion for partial summary judgment as to punitive damages.

Writ Granted.

Justices WORKMAN, STARCHER, MAYNARD and McCUSKEY joined in the Opinion of the Court.

Justice McGRAW did not participate in the decision of this case.